W. E. CROSS, t/a Virginia Tours and Gray Line of Richmond

v.

UNITED STATES of America.

Civ. A. No. 3293.

United States District Court
E. D. Virginia,
Richmond Division.

Feb. 9, 1962.

See publication Words and Phrases, for other judicial constructions and definitions of "Wilfully".

---

Tucker, Mays, Moore & Reed, Richmond, Va., for plaintiff.

C. Vernon Spratley, Jr., U. S. Atty., Richmond, Va., for Government.

LEWIS, District Judge.

The plaintiff seeks a refund of penalties paid in the amount of $3,187.70, for the years 1957 and 1958, resulting from his failure to collect the tax on transportation furnished by him to third parties.

The assessment, payment of the penalty, the timely filing of claim for refund, the rejection of the claim for refund and the commencement of the present suit within the time permitted by law were stipulated by the parties.

The determinative questions are:

1. Whether the total price paid for a sight-seeing tour is taxable transportation, as provided in § 4261 of the Internal Revenue Code of 1954, as amended, 26 U.S.C.A. § 4261;

(2) If not, whether plaintiff's books and records were sufficient to comply with the provisions of § 49–4261–2 (Treasury Regulations on Excise Tax, 1954 Code);

(3) Whether the plaintiff willfully failed to collect, account for, and pay over the proper transportation tax as provided in § 4291 of the Internal Revenue Code, 26 U.S.C.A. § 4291.

All of the testimony presented in this case was submitted by the plaintiff. The record thus made discloses that the plaintiff, as an individual, operates two bus services in and from Richmond, Virginia. One of these services, Virginia Tours, is a charter bus service which plaintiff has operated since 1935. The other service, Gray Lines of Richmond, is a sight-seeing tour which the plaintiff operates under a franchise which he has held since 1950. The tax liability in this case pertains only to the operations of Gray Lines of Richmond.

Two types of passengers are involved —those who buy single tickets and those who are members of a large group tour. There are two guided tours each day, one beginning at 10:00 A.M., the other at 2:00 P.M. Two types of buses are used, a Volkswagen bus which will accommodate seven passengers and a Ford bus which will accommodate twenty-nine passengers. The latter is used when there are more passengers than the

**646**

Volkswagen will hold. The actual tour covers a distance of ten and one-half miles. Travel to and from the garage covers an additional mile and a half. The drivers of both buses lecture and point out the places of interest during the entire trip. Four stops are made, during three of which the driver goes inside the place of interest and lectures. The driver does not lecture at the fourth place. He "stands by" while the passengers disembark (the guided tour in this place is furnished by the tobacco company). The regular charge for the complete tour was $3.00 per adult and $1.50 per child. With the exceptions of 1957 and 1958, the plaintiff paid the 10% tax on the full price of the tour ticket.

During 1957 and 1958, the plaintiff allocated on his books 60¢ of the $3.00 adult charge to transportation and $2.40 to tour services. From the $1.50 child ticket, 30¢ was allocated to transportation and $1.20 to tour service. The amount allocated for transportation was based upon the mileage rate that was charged for charter buses, the size of the bus and the number of passengers to be accommodated. The amount thus allocated to transportation was $4,183.80 in 1957, and $3,127.50 in 1958. The balance of the total income from the sale of tour tickets was allocated to tour expenses and profits or losses. The plaintiff's books disclosed the following items of expense in the operation of Gray Lines of Richmond for the years 1957 and 1958:

1957

Amount paid to Virginia
Tours for lease of buses

| | |
|---|---|
| and drivers | $ 7,917.40 |
| Advertising | 1,912.79 |
| Telephone | 370.69 |
| Licenses | 450.00 |
| Office supplies | 101.02 |
| Convention expenses | 100.00 |
| Commissions | 2,159.53 |
| Total | $13,011.43 |

1958

Amount paid to Virginia

Tours for lease of buses

| | |
|---|---|
| and drivers | $ 7,967.60 |
| Advertising | 1,628.26 |
| Telephone | 454.97 |
| Licenses | 250.00 |
| Office supplies | 251.91 |
| Commissions | 1,551.40 |
| Total | $12,104.14 |

The Gray Lines of Richmond did not own or operate any buses or employ any drivers. The buses and drivers used by the company were leased from Virginia Tours (a company owned by the plaintiff) on a per mile charge of 40¢ for the larger bus and a per mile charge of 20¢ for the smaller bus.

The testimony further disclosed that the four points of interest included in the tour could be reached by public transportation at a total cost of 45¢.

Section 4261 of the Internal Revenue Code of 1954 imposes an excise tax upon amounts paid within the United States for taxable transportation of any person by rail, motor vehicle, water or air. Except as provided in § 4264, 26 U.S.C.A. § 4264 (which is not pertinent in this case) the tax imposed by § 4261 shall be paid by the person making the payment for transportation subject to tax.

Section 4291 provides that the person to whom payment is made shall be responsible for collecting the tax. Section 4262 of the 1954 Code, as amended by § 3 of the Act of July 25, 1956, 26 U.S.C.A. § 4262, which defines the term "taxable transportation", does not define it in any manner which would assist in the determination of any issue in this case. However, Treasury Regulations on Excise Taxes, specifically Treasury Regulation § 42.4261–2, provide:

"(d) Where a payment covers charges for non-transportation services as well as for transportation of a person, such as charges for meals,

hotel accommodation, etc., the charges for non-transportation services may be excluded in computing the tax payable with respect to such payment, provided such charges are separable and are shown in the exact amounts thereof in the records pertaining to the transportation charge. If the charges for non-transportation services are not separable from the charge for transportation of persons, the tax must be computed upon the full amount of the payment."

Treasury Regulation, § 42.4261–8 cites certain examples of payments not subject to tax. These examples include charges for admissions, guides, meals, hotel accommodations and other non-transportation services, where such items are included in a lump sum payment for an all-expense tour.

It is therefore clear that taxable transportation does not include the lump sum payment for its sight-seeing tour, which includes other charges provided such charges are separable and are shown in the exact amounts thereof in the records pertaining to the transportation charge. In fact, the Government so concedes but contends the lump sum payment, in this case, is the amount upon which the tax should be computed because the plaintiff did not maintain the type of records provided for by the aforesaid Treasury Regulation.

The Government further contends the burden is upon the tax collector (in this case, the plaintiff) to establish, by proper records, that portion of his total collection that is not subject to the transportation tax, and that this may only be shown by specific reference to a particular cost item.

All of the pertinent books and records of the plaintiff were submitted to the Court for examination during the trial of this case and certain portions thereof were introduced in evidence as exhibits. These records show that the plaintiff, during the years in question, listed the numbers of the bus, the driver, the number of passengers, the place of departure, the amount charged for transportation, the amount charged for tour service and the total amount received from both group and twice a day scheduled sight-seeing tours. Sixty Cents per adult passenger and Thirty Cents per minor passenger were allocated to transportation. Two Dollars and Forty Cents per adult and One Dollar and Twenty Cents per child were allocated to tour services. The books further disclosed the amount spent for advertising, telephone, licenses, office supplies, convention expenses and commissions paid to hotels and others for the sale of tourist tickets. The records further recorded the amount paid to Virginia Tours for the leasing of the buses and the services of the driver-lecturer.[1]

The Government contends in its argument that this allocation of Sixty Cents for transportation per passenger does not reflect the actual cost of the transportation in question and, at best, is an arbitrary allocation made by the plaintiff and is not sufficiently supported upon the records of the plaintiff to permit the Commissioner of Internal Revenue to determine the amount of transportation tax due.

It is significant to note that the Government offered no evidence in support of its contention that the amount charged for transportation of the person was either arbitrary or unreasonable. Whereas, the plaintiff proffered evidence indicating that Sixty Cents per passenger was more than would have been charged on a comparable mileage basis. He further testified that Sixty Cents per passenger was Fifteen Cents greater than public transportation to the same points of interest.

The actual transportation consisted of ten and a half miles of travel. The total

---

1. This amount was in excess of the amount allocated to transportation. It included the rental of the bus and services of the driver during the hour and a half "stand by" time.

sight-seeing trip consumed about two and a half hours, one hour of which was actual moving transportation and one hour and a half of which was stand-by time.

The sight-seeing ticket included the following services:

1. Selection of the points of interest;

2. Lecture service at three of the places of interest;

3. Lecture service between the places of interest while en route thereto;

4. Stand-by time while the sight-seers viewed the various places of interest from within the buildings in question; and

5. Transportation of the sight-seers to and from the places of interest.

The plaintiff did not collect any transportation tax from the sight-seers.

Upon these facts and upon the plaintiff's records, the Commissioner of Internal Revenue concluded the charges for non-transportation services were not separable from the charge for transportation of persons, and the tax must be computed upon the full amount of the payment for the sight-seeing tour.

■■■■■ There is an initial presumption of the correctness of the Commissioner's assessment and the burden is upon the plaintiff to show that the assumption is erroneous. However, this presumption is a presumption of law only and not a presumption of fact. It places upon the plaintiff the burden of going forward with the evidence, and when the plaintiff does this, the presumption disappears. The presumption does not constitute evidence in the case. Manchester Board & Paper Co. v. C. I. R., 89 F.2d 315, 4th Cir., 1937; Woodward v. United States, 106 F.Supp. 14, N.D.Iowa 1952, affirmed 8 Cir., 208 F.2d 893.

The Court of Appeals for the Sixth Circuit in Wooster Rubber Co. v. C. I. R., 189 F.2d 878, in reversing the holding of the Tax Court, disregarding the plaintiff's uncontradicted evidence, stated:

"The petitioner's witnesses were qualified and unimpeached; and no evidence was offered in contradiction of their sworn statements. In such circumstances, their testimony should have been accepted."

■■■■■ In Herbert v. Riddell, D.C., 103 F.Supp. 369, 389, the Court stated, where no contradictory evidence was offered by the Government:

"The testimony of one credible witness as to a fact, if not contradicted, and if not inherently improbable, is sufficient to establish such fact. The principle obtained in the law of taxation."

See also Franklin Lumber & Power Co. v. C. I. R., 4 Cir., 50 F.2d 1059.

The question of adequacy of records, as provided in Treasury Regulation § 42–4261–2 was considered in Puig v. Tomlinson, D.C., 143 F.Supp. 659. That Court held if the books and records of the travel company are sufficiently clear and susceptible of analysis as to transportation and nontransportation charges, the failure to show the separation of the charges on the ticket or upon similar types of records does not mean that the entire amount paid for the all-expense tour is taxable as a transportation charge.

In support of its contention the Government relies primarily on the case of Loew's, Inc. v. United States, D.C., 99 F.Supp. 100. In that case neither company had any records to show what part of the charges made to Loew's was for transportation and what part for nontransportation. Further, the tour company collected the transportation tax upon the entire charge made to Loew's.

The Government further cites Armour & Co. v. United States, 144 Ct.Cl. 697, 169 F.Supp. 521, and Beber v. United States, D.C., 167 F.Supp. 169. These cases held the term transportation as used in § 3475 of the 1939 Code, 26 U.S.C.A. § 3475 included so called accessorial services furnished by a common carrier, such as salting, icing and heating of cars to protect the contents.

■ From the record in this case the Court is of the opinion that the plaintiff has carried the necessary burden of proof to establish a transportation charge of sixty cents per adult and thirty cents per child. The Commissioner of Internal Revenue could have ascertained from the plaintiff's records whether or not there was any taxable transportation due for the years 1957 and 1958.

The Commissioner, in this case, having held the total purchase price of the sight-seeing ticket was subject to the transportation tax, proceeded to invoke the 100% penalty provided for in § 6672 of the Internal Revenue Code, 26 U.S.C.A. § 6672, for willful failure to collect and pay over the tax. He supports the "willful charge" on the ground the Internal Revenue had ruled the plaintiff was liable to collect the tax on the full amount of the charge; that his failure to so do was deliberate.

The Government relies upon Kellems v. United States, D.C., 97 F.Supp. 681 which held "wilfully" as used in the counterpart of § 6672 of the 1954 Code, means "without reasonable cause". One who acts intentionally, conscientiously and voluntarily, acts wilfully.

■ Applying the Government's definition to the word "wilfully" as used in the statute, the facts in this case do not justify the 100% penalty as imposed.

Title 26 U.S.C. § 7805, provided the tax imposed by § 4261 shall not apply to amounts paid for transportation that do not exceed sixty cents.

Hence, if the plaintiff is correct in his contention that if the transportation portion of his sight-seeing tour ticket does not exceed sixty cents, he is not required to collect and pay over any transportation tax.

In any event we do not believe the plaintiff acted "wilfully", and we so hold. The plaintiff was advised by his Florida attorney that he did not have to pay the tax in question. Thereafter he consulted his Richmond attorney and through him requested the opinion from the Internal Revenue Service. When the opinion was unfavorable, he paid the tax under protest and availed himself of his legal right to test the opinion of the Internal Revenue Service by instituting an appropriate proceeding in the Federal Court.

See Gray Line Co. v. Granquist, 9 Cir., 237 F.2d 390, wherein the Court of Appeals held the appellant's position was not arbitrary or unreasonable—that he acted in good faith and had reasonable cause to contest. Hence he did not act wilfully.

Counsel for the plaintiff will prepare an appropriate order in accordance with this memorandum opinion, submit the same to counsel for the Government for approval as to form, and the same will be entered accordingly.