Anthony FLAN, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 14095.

United States Court of Appeals
Seventh Circuit.

Jan. 7, 1964.

Anna R. Lavin, Chicago, Ill., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Earl J. Silbert, Atty., U. S. Dept. of Justice, Washington, D. C., Frank E. McDonald, U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, CASTLE and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This suit was brought by plaintiff Anthony Flan seeking a refund of $9,513.23 plus interest. This sum had been exacted as a penalty under provisions of Title 26 U.S.C. §§ 6671 and 6672 which provided that persons who collect withholding and FICA taxes, are required to truly account for and pay over such taxes.

Anthony Flan was the president and principal stockholder of the Oakton Engineering Corporation (Oakton). The only other officer of the firm was Shirley Flan, but she was inactive. Oakton was engaged in the business of manufacturing and selling a display machine used by purchasers to market their products.

Oakton had filed with the District Director of Internal Revenue, employers' quarterly federal tax returns for each quarter between January 1, 1955 and December 31, 1957, reflecting its liability under the Federal Insurance Contribution Act (FICA), and the Federal Unemployment Tax Act (FUTA). Each return was signed by taxpayer, Anthony Flan.

Oakton did not make payment of taxes withheld from its employees' wages for the fourth quarter of 1955. It made partial payment for the second quarter of 1957 and failed to make any payment for the third and fourth quarters of 1957.

In 1955, Oakton found itself in a difficult financial condition. It was overdrawn at the bank. It was delinquent for several quarters of its withholding and FICA taxes. All of its outstanding

capital stock had been pledged. Oakton was on the lookout for a source of additional income.

Pettibone-Mulliken Corporation (Pettibone) was interested in expanding into the electronics business. It hired one Barrett King on a fee basis to examine companies in this field and make recommendation with respect to companies with which Pettibone might become affiliated. King recommended several concerns including Oakton.

On December 28, 1955, Oakton and Pettibone executed a written agreement in which Pettibone agreed to employ Oakton to manufacture and assemble 250 "Robo-Tape Vendors". Pettibone agreed to purchase the inventory then owned by Oakton which was to be used in the manufacture of the 250 machines, and also agreed to purchase the necessary additional inventory from other suppliers. Pettibone was to pay Oakton the sum of $62 for each complete machine "which said sum shall compensate Oakton Engineering Corporation for all labor, overhead burden and margin of profit in the manufacture of these items."

Thereafter, King devoted substantially all of his time to the business of Oakton. He remained at Oakton until June 1957.

The arrangement between Oakton and Pettibone did not provide Oakton with sufficient working capital. From time to time, King would recommend to Pettibone that it make cash advances to Oakton. Pettibone did make many cash advances, but it did not do so each time such a request was made. The monies advanced were used by Oakton to pay many of its operating expenses including salaries and current and delinquent taxes.

In January 1957, Oakton and Pettibone entered into a second agreement. This agreement was dated back to December 28, 1955. By this agreement, all of Oakton's receivables were assigned to Pettibone. Pettibone did not agree it would pay or be liable for Oakton's salary obligations, delinquent taxes or any other payables. Pettibone continued to make advances.

Many times when King requested an advance to pay taxes he would remind Pettibone of the outstanding obligation for the December 1955 installment. However, no advance was ever sent to specifically cover this item. When memoranda from King on this subject ceased, Flan testified he assumed the tax had been paid.

On April 1, 1959, the District Director assessed a penalty equal to the amount of the unpaid tax against Flan pursuant to §§ 6671 and 6672, Internal Revenue Code of 1954. On March 25, 1960, Flan paid the assessment in full. Thereafter he filed timely claims for a refund.

Title 26 U.S.C. § 6672 provides: "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who *willfully fails* to collect such tax, or truthfully account for and pay over such tax, or *willfully attempts* in any manner to evade or defeat any such tax * * * " shall be liable for a penalty (Emphasis supplied).

The District Court held "The word 'wilfully' as used in § 6672 means 'knowingly', 'voluntarily', or 'intentionally'." Taxpayer argues the standard of conduct necessary to imposition of the penalty is more stringent; that only when the failure to account is done "without reasonable cause" can the penalty be imposed. Taxpayer says that the authorities are divided on the question, but insists that his view represents the weight of authority and finds strong support, not only in law, but in reason.

Taxpayer points out that the tax liability here involved is not his, and insists that the courts cast a "jaundiced eye" where the United States Government calls upon a third person to respond to the tax of another.

It is argued by taxpayer that the wording of the statute that any person required to account for and pay over the tax who willfully fails to collect such tax or willfully attempts to in any manner evade or defeat the tax, are words familiar in the context of fraud statutes; that the fraud statute requires not only a bad

or evil motive but a motive specifically designed to defraud the Government of tax.

Taypayer also argues that the penalty is a severe penalty and that cases such as Kellems v. United States (D.C.Conn.), 97 F.Supp. 681, and Cushman v. Wood (D.C.Ariz.), 149 F.Supp. 644, concluded that the very severe nature of the penalty called for the strict construction of the word "willfully" as urged by the taxpayer.

Taxpayer relies upon Cushman v. Wood (D.C.Ariz.), 149 F.Supp. 644. This case did hold that the term "willfully" as used in section 2707(a) [1] means without reasonable cause; that the basic elements of willfulness are consonant with that applied by the courts to willful conduct which is punished by a severe penalty. The Court said this view of the scope of the word "willful" is buttressed by the very severe nature of the penalty. We think the Cushman case does support taxpayer's argument in the instant case. However, we cannot consider Cushman as stating the rule prevailing in the Ninth Circuit in view of Bloom v. United States, 9 Cir., 272 F.2d 215.

Bloom owned 898 out of 900 shares of the common stock of the corporation there involved. He was the chief executive officer although he was absent from the company office much of the time. The claim was made that the bank which had been financing the corporation dictated what disbursements should be made. The Court held, 272 F.2d 215, 223: "In our view there need not be present an intent to defraud or deprive the United States of the taxes collected or withheld for its account, nor need bad motives be present in order to invoke the sanctions of Section 2707(a) [1]. * * * In our view such conduct was willful within the meaning of Section 2707(a)." [1] Furthermore, the Court in Bloom disapproved of the language in Cushman which is relied upon by taxpayer in the instant case.

Taxpayer quotes at length from Frazier v. United States, 5 Cir., 304 F.2d 528. That Court well said, 304 F.2d page 529: "As with many such issues the definition of 'willful' has been smothered with a maze of semantics." However, the specific holding in Frazier was, 304 F.2d, page 530: "For the present we need only hold that in a civil case where a responsible officer paid employees their net wages at a time when the corporation had insufficient funds to cover the taxes thereon and, when such funds became available, preferred subsequent creditors over the United States, knowing at all times his obligation to pay such taxes, his failure to pay was 'without reasonable cause' and 'willful' within the meaning of section 6672."

Taxpayer professes great comfort from one sentence in Frazier, 304 F.2d page 530: "We are of the opinion that 'without reasonable cause' as used in the Grandquist [Gray Line Co. v. Grandquist, 9 Cir., 237 F.2d 390] and Kellems cases is part of the civil test in determining whether the failure to pay was willful." Assuming the quotation immediately above was the holding of the Frazier case, a proposition which we deny, nevertheless, the fact situation in the case at bar is such that the specific quotation is not applicable here.

■■ The case at bar was tried to the Court. Findings of fact in considerable detail were filed and are supported by substantial evidence. Among these were: Flan had the ultimate authority over paying the salaries of Oakton employees as well as Oakton's other activities; at all times pertinent to this action, there were sufficient funds in Oakton's bank account to pay the delinquent taxes here in issue; Finding No. 26 was "Flan knowingly and intentionally authorized Oakton to use its cash funds to pay other creditors instead of the debt to the Government."

1. Section 2707(a), Code of 1939, contains substantially the same provisions as Sections 6671(a) and 6672, Code of 1954.

We hold that the judgment of the District Court in favor of the United States of America must be and the same is hereby

Affirmed.