Robert W. MONDAY, Plaintiff,

v.

UNITED STATES of America,
Defendant and Third-Party
Plaintiff,

v.

John A. MONDAY, Third-Party
Defendant.

No. 66-C-140.

United States District Court
E. D. Wisconsin.

Jan. 14, 1969.

Martin J. Torphy and E. Campion Kersten, Milwaukee, Wis., for plaintiff.

Mitchell Rogovin, Asst. Atty. Gen., Daniel J. Dinan and Nestor M. Nicholas, Attys., Dept. of Justice, Washington, D. C., James B. Brennan, U. S. Atty., by Thomas R. Jones, Asst. U. S. Atty., Milwaukee, Wis., for defendant and third-party plaintiff.

Francis J. Demet, Milwaukee, Wis., for third-party defendant.

## OPINION AND ORDER ON DEFEND-ANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VER-DICT, OR FOR A NEW TRIAL

REYNOLDS, District Judge.

### INTRODUCTION

This opinion on the Government's motions after verdict is primarily concerned with the proper construction of the word "willfully" as used in § 6672 of the Internal Revenue Ccde.[1] The Government, in effect, claims that the word "willfully" does not include the concept of reasonable cause and in effect means "knowingly."

This court believes that the word in the statute has a meaning which in part encompasses the concept that where the failure to do the required act is based on reasonable cause, then such failure is not willful. As will be seen later, if this court's interpretation of the word is correct, then the Government's motions after

---

1. § 6672 "Failure to collect and pay over tax, or attempt to evade or defeat tax

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

verdict must be denied; and, of course, if this court is in error on the meaning of "willful," then the Government's motions should have been granted.

A penalty assessment under 26 U.S.C. § 6672 was made against Robert W. Monday for the withholding and F.I.C.A. taxes withheld from wages of employees of the P. C. Monday Tea Company for the last two quarters of 1960. Partial payment was made under protest, and timely claim for refund was made. The District Director of Internal Revenue denied the claim for refund. Robert W. Monday then instituted this action for recovery of the amount so paid. The Government counterclaimed for $10,836.17, the balance of the assessment, and interpleaded John A. Monday as a third-party defendant, claiming that he was equally liable with Robert W. Monday under the counterclaim.

Trial to a jury was had from June 4, 1968 to June 7, 1968. The jury found that both Robert W. Monday and John A. Monday were *responsible* officers for the periods in question pursuant to § 6672. The jury also found that neither John A. Monday nor Robert W. Monday *willfully* failed to pay the taxes in question. Accordingly, judgment was entered for the Mondays on June 11, 1968. The Government filed motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.

FACTS

The P. C. Monday Tea Company (hereinafter called the "Company") was organized in 1918 by the father of Robert and John Monday. In 1960, the Company, which had about fifty-five employees, sold groceries to housewives, door to door, on a delivery route basis. The salesmen carried the groceries with them in their trucks.

During the last half of 1960 and thereafter, Robert W. Monday was president and a director and John A Monday was vice president, secretary, and a director of the Company. Both Robert and John Monday were active in the management of the business, although there was a substantial division of authority between them. John A. Monday spent virtually all of his time in the office, and Robert W. Monday was in the office about 25 per cent of the time. John A. Monday signed and participated in the preparation of the corporate tax returns.

The employer's quarterly federal tax returns were timely filed for the period in question without remittance. Both of the Mondays had the authority to sign checks, and together they negotiated loans and signed notes and mortgages as necessary.

In about 1956, the financial condition of the Company took a decided turn for the worse. This condition continued so that by 1960 the annual gross of the Company was only about half of its annual gross of the previous five years.

After 1960, the Company acquired its merchandise virtually on a c. o. d. basis. In March 1961, the Monday brothers went to the Milwaukee Internal Revenue Office to discuss the withholding tax arrearage. Despite the withholding tax arrearage, they were given specific permission by a supervisor in the Collection Department to continue to buy merchandise on a cash basis so that the Company could stay in business.

The Government argues that the action of the supervisor in giving the corporation permission to buy on a cash basis in no way relieved the Mondays of their legal responsibilities and therefore is immaterial. I agree that the action of the supervisor in no way relieved the Mondays of their legal responsibilities, but I believe it was admissible so that the jury could consider this evidence along with the other evidence in determining whether the Mondays' action was willful. This is especially so in view of the fact that the essence of the Government's case is that the Mondays bought this merchandise instead of paying the money over to

the Government, and that this constituted a preference over the Government.[2]

In spite of this cash operation, the Company went into receivership in May of 1961. Bankruptcy followed on July 18, 1961. In September 1963, the trustee in bankruptcy distributed to the District Director the amount of $10,978.24, of which $435.84 was applied to the taxes on which the penalty assessment was based.

As indicated at the outset, all but one of the questions now raised by the Government result from a dispute as to the meaning of the word "willfully" in § 6672 of the Internal Revenue Code. The Government contends that if a responsible officer knew the taxes were due and the corporation had *any* money that was not used to pay the taxes, then the failure to pay was, as a matter of law, willful. In essence, the Government would impose on the responsible officer a form of strict liability for the taxes if there was any money coming into the hands of the corporation and if such officer knew the taxes were due and owing.

■ The statute in question, however, uses the word "willfully" not once but twice. Had that word been omitted, the type of liability suggested by the Government would exist. If Congress had wanted to hold the responsible officer strictly liable for the taxes if there was at any time any money available in the corporation, it could have done so with direct language by making such officer personally liable. The Government here is trying to impose such a standard of strict liability on the responsible officer. I do not believe that to be the law. Congress said that for a person to be liable for the tax, he must be a responsible officer who *"willfully* fails to \* \* \* pay over such tax \* \* \*."" Consequently, an intentional failure which cannot be negated by a reasonable cause on the part of the responsible officer is essential to a finding of liability. To hold otherwise would

render nugatory the very language of the statute. This court respectfully declines to rewrite the statute as the Government now requests.

### IS THERE EVIDENCE WHICH SUPPORTS THE JURY FINDING THAT THE MONDAYS DID NOT WILLFULLY FAIL TO PAY THE TAXES IN QUESTION?

■ The Government has moved for judgment notwithstanding the verdict. If it can be said that no evidence supports the finding of the jury, the Government must prevail. In the view of this court, however, there is evidence from which the jury could infer that the failure by Robert and John Monday to pay over the taxes in question was not a willful failure as "willfully" was defined in the instructions given by this court, which will be discussed later.

■ The jury could find that the specific permission given by the supervisor in the Collection Department of the Milwaukee Internal Revenue Office to buy merchandise on a cash basis, despite the withholding tax arrearage, constituted reasonable cause for failure to pay the taxes due. This, of course, would mean that the failure was not willful, which is the verdict the jury returned. Consequently, since there is evidence which supports the verdict, it cannot be disturbed.

### WAS THE INSTRUCTION ON THE MEANING OF THE TERM "WILLFUL" ERRONEOUS?

The following instructions on the meaning of "willful" were requested by the Government and refused:

"An act is willful if it is voluntary, conscious, and intentional. If you find that plaintiff and/or third-party defendant knowingly used available funds to prefer other creditors over the United States then you must find that he acted willfully.

---

2. This is not a case where a corporation gives a preference to pre-existing creditors. At the most, the Mondays were paying after-acquired creditors (i. e., suppliers) with the permission of the Internal Revenue Service.

"The Court instructs you that when a corporation meets its payroll it is presumed to have withheld therefrom the amount of taxes which the law requires it to withhold. The payment of wages to employees charges responsible persons with having in their hands the withholding taxes which is held as a trust fund. If a responsible person uses those funds for purposes other than payment of taxes, he or she is deemed to have acted willfully.

"The Court further instructs you that if a responsible person pays employees their net wages at a time when the corporation does not have sufficient funds to pay the taxes withheld, and when the funds become available, he or she uses them to pay other creditors, that person acts willfully.

"With regard to the phrase 'reasonable cause,' you are instructed that if you find that John and Robert Monday knew the taxes were owing, that there was money available to pay the taxes, and that John and Robert Monday paid other creditors instead of paying the taxes, then their failure to pay over the taxes was not due to reasonable cause."

The court gave the jury the following instructions as to the meaning of the word "willful" as used in § 6672 of the Internal Revenue Code of 1954:

"You are instructed that for the plaintiff's and/or third-party defendant's failure to pay over the taxes withheld to have been willful it is not necessary that there have been present any intent to defraud or to deprive the United States of taxes, nor is it necessary that bad motives or wicked design be shown.

"The term 'willful' means a voluntary, conscious and intentional act, done without reasonable cause, to prefer other creditors of the corporation over the government.

"Mere negligence, that is, failure to exercise ordinary care, in respect to collecting, truthfully accounting for or paying over the taxes is not enough to establish willfulness.

"A 'willful' act may also be described as one done intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly, or inadvertently.

"A 'willful' act differs essentially from a 'negligent' act. The former, that is 'willful,' is positive; and the latter, that is 'negligence,' is negative."

The Government contends that giving this instruction and denying the Government's requests was error and that a new trial is therefore required.

To support its definition of "willful," the Government relies on Bloom v. United States, 272 F.2d 215 (9th Cir. 1959). *Bloom* involved a taxpayer suit for refund under the earlier version of the provisions of the Internal Revenue Code now before this court. The Government had assessed a penalty against Bloom as a responsible officer in order to recover social security and withholding taxes which were withheld from employee wages but never paid to the Government.

The court in *Bloom* held that it was not proper to include criminal intent in the definition of "willful." The court was unable to agree with the following definition, asserted by Bloom:

" 'Thus, the basic elements of willfulness are evil motive, lack of justification, bad purpose, or something done or not done without justifiable excuse.' * * *" Bloom v. United States, supra, at 223–224.

That court did, however, adopt a definition of "willful" when it said:

" * * * The decision of appellant as the responsible officer of the corporation not to have the corporation pay over to the government the withheld taxes was a voluntary, conscious, and intentional act to prefer other creditors of the corporation over the United States. In our view such conduct was willful within the meaning of [the statute]. * * *" Bloom v. United States, supra, at 223.

The same circuit, however, in Gray Line Co. v. Granquist, 237 F.2d 390 (9th

Cir. 1956), held that reliance on the advice of an attorney and an Internal Revenue opinion was reasonable cause for failing to pay a disputed tax. There is no indication in *Bloom,* supra, that the court intended to overrule its holding in *Gray Line,* supra.

*Gray Line,* supra, involved the predecessor section of the Internal Revenue Act, 26 U.S.C. § 1718 (1952), which is essentially the same as § 6672 in the current Code. The plaintiff corporation sued for refund of a 100 per cent penalty which had been paid under protest. The penalty had been assessed for the transportation tax plaintiff should have collected from its passengers.

Plaintiff had not collected the tax in reliance on the opinion of an attorney and an opinion of the Special Deputy Tax Collector. The court held that this reliance was in good faith and gave plaintiff reasonable cause to contest the liability for the tax even though a demand letter from Internal Revenue had been received subsequent to the advice of the collector. Consequently, the court concluded that plaintiff did not act willfully in failing to collect and pay the tax.

The fact situation before this court is far more analogous to that presented in *Gray Line,* supra, than it is to the facts of *Bloom,* supra. The evidence is that the Mondays were acting in good faith at all times. The Mondays relied on the specific permission of an officer of the Internal Revenue to continue in business as they did. In the view of this court, this certainly constitutes reasonable cause for failing to pay the taxes in question.

Other courts have taken positions compatible with that of *Gray Line,* supra. In Frazier v. United States, 304 F.2d 528 (5th Cir. 1962), the court held that failure to pay the taxes involved was willful and without reasonable cause when (1) net wages were paid to employees although the corporation did not have sufficient funds to pay the taxes withheld, and (2) when the funds became available to pay the taxes, the Gov-

ernment was not paid. The court agreed that "without reasonable cause" is a part of the test for "willful" failure, but concluded that there was no reasonable cause presented here as a matter of law.

A district court adopted a similar view to that expressed in *Gray Line,* supra, in Cross v. United States, 204 F.Supp. 644 (E.D.Va.1962). The court held in *Cross* that there was no "willful" failure to pay the transportation taxes in question because the plaintiff acted in reliance on the advice of two attorneys. When one of the attorneys got an opinion from the Internal Revenue Service that was not favorable, Cross paid the taxes under protest and sued for refund. Under the facts in *Cross,* supra, the district court concluded that the original failure to pay the taxes was not "willful" within the meaning of § 6672 of the Internal Revenue Code.

The situation in which the Mondays found themselves presents even more compelling reasons for concluding that the failure to pay the taxes was not "willful." The Mondays continued their business and paid for supplies in reliance upon the specific permission of an officer of the Internal Revenue rather than mere advice of attorneys.

The only Seventh Circuit case brought to the attention of this court is Flan v. United States, 326 F.2d 356 (7th Cir. 1964). This was an action for refund of the penalty exacted for failure to pay withholding and F.I.C.A. taxes withheld from wages. Flan was the president and principal stockholder of the corporation and the only active officer. He signed and filed all returns in question, and in some instances enclosed partial payment on the taxes due. It was found as a fact that there were sufficient funds in the corporation's bank accounts at all times in question to pay the delinquent taxes in issue.

The *Flan* case was tried to the court. The court found as facts that Flan had ultimate authority to determine who the corporation would pay and that the cor-

poration bank accounts had, at all times, sufficient funds to pay the delinquent taxes involved. The trial court held that "willfully" as used in § 6672 meant only "knowingly," "voluntarily," or "intentionally," and held that Flan was liable for the penalty assessed. The court of appeals affirmed.

On appeal, Flan argued that "willful failure to account" requires that the failure be "without reasonable cause." The court of appeals concluded, however, that the fact situation presented made "reasonable cause" inapplicable to the definition of "willful." In the view of this court, such action by the court of appeals does not constitute a rejection of the use of "reasonable cause" in the definition of "willful" when in fact reasonable cause does exist.

The facts in the case at bar are distinguishable from those presented in *Flan*. The Mondays had specific permission from the Internal Revenue to continue operations as they did; Flan asserted no such permission or any other fact which could constitute reasonable cause. This distinction makes it a question for the jury to determine whether the failure of the Mondays to pay the taxes in question was with reasonable cause and therefore not willful.

## WAS EVIDENCE OF THE CORPORATION'S FINANCIAL CONDITION AND BANKRUPTCY ERRONEOUSLY RECEIVED?

During the course of the trial, evidence relating to the financial condition of the corporation during the times in question and the bankruptcy proceedings of the corporation was received over the objection of the Government.

The Government contends that such evidence prejudiced its case and was irrelevant.

Evidence dealing with the financial condition of the corporation and with the ensuing bankruptcy is clearly relevant to the understanding by the jury of whether or not the officers were act-

ing in good faith and had reasonable cause not to pay the taxes in question. The jury should have the whole picture of the financial operation of the corporation as it relates to its ability to pay.

## WAS TESTIMONY IMPROPERLY ADMITTED AS EXPERT OPINION?

During the trial, a deposition taken of Deane Nichol, a certified public accountant, was introduced as evidence over the objection of the Government. Mr. Nichol was in New York undergoing surgery at the time of the trial, and the deposition had been taken in the presence of counsel for all parties with the knowledge that he would be unavailable for trial.

Mr. Nichol was the accountant employed by the P. T. Monday Tea Company to audit the corporation's books and prepare financial statements from about October 1960 to about March 1961. During the taking of the deposition, it was agreed that the deposition was to be both for discovery and for use at trial. Numerous objections of various natures were made by counsel for all parties during the taking of the deposition, but no questions were certified to the court.

At the trial, the Government objected to the qualification of Mr. Nichol as an expert for the purposes of this trial.

Since this court has already ruled on the relevance of the financial condition of the corporation at the times in question, it will not be repeated at this point. Suffice it to say that since the financial condition of the corporation was relevant to the question of the Monday brothers acting in good faith and with reasonable cause, expert evidence on the financial condition was proper.

Jones on Evidence, Vol. 4, §§ 413, 414, 420, 437 (1958) and 1968 Supplement, and authority cited therein, clearly indicates that Mr. Nichol was properly qualified as an expert and his testimony was properly admitted. In view of his qualification as an expert, the instruction dealing with expert testimony was also in order.

WAS IT ERROR NOT TO INSTRUCT THAT THE PENALTY IMPOSED BY THE STATUTE IS NOT A PENALTY?

The court gave the following instructions with regard to the penalty assessed against the Mondays under § 6672:

"The sums involved in this suit arise from the claimed liability of the P. C. Monday Tea Company to pay over income taxes and social security taxes which were withheld from the wages of its employees but which were not paid over to the government.

"The money sought by the United States against Robert Monday and/or John Monday in this action was not assessed against each of them as a tax owing by him but as a penalty for an alleged violation of the law. The penalty is not imposed as a remedial provision designed simply to enable the government to collect the taxes due. The liability asserted against Robert Monday and/or John Monday is wholly distinct from and in addition to, not a substitute for, the corporation's liability for the withheld taxes.

"The purpose of the statute is not to punish but to secure the collection of a fund that has passed into the hands of the employer from the employees, which is a special trust fund, the employer acting as a collecting agency for the United States. If a corporation meets its payroll, it is presumed that it received and had in its possession and under the control of its officers the withholding taxes."

The Government contends that it was error to use the word "penalty" in the instructions, although that is the very work used in the statutes. This court believes it was necessary to instruct the jury as it did. Had the provision been intended by Congress to be something other than a penalty, another word could certainly have been used. Again, this court respectfully declines to amend a congressional act.

For all the foregoing reasons,

It is therefore ordered that the motion of the United States of America for judgment notwithstanding the verdict be and it is hereby denied.

It is further ordered that the motion of the United States of America for a new trial likewise be and it is hereby denied.