**Robert J. BRADEN, Plaintiff,**

v.

**UNITED STATES of America,
Defendant,**

v.

**John F. BONISTALL, Third-Party
Defendant.**

**Civ. A. No. 67–320.**

United States District Court,
S. D. Ohio, E. D.

July 16, 1970.

John C. Graham, Zanesville, Ohio, for Robert J. Braden.

Stephen J. Csontos, Tax Division, Dept. of Justice, Washington, D. C., for United States.

John F. Bonistall, third-party defendant, in pro. per.

### FINDINGS OF FACT
### CONCLUSIONS OF LAW

WEINMAN, Chief Judge.

This case against Robert J. Braden and John F. Bonistall pertains to the personal liability of a corporate officer for the corporation's failure to pay federal taxes withheld from its employees for income taxes and Social Security taxes. Section 6672, I.R.C. (Title 26, U.S.C.A., Section 6672) imposes such liability on a corporate officer who is responsible for the collection and payment of such taxes and who willfully fails to cause such taxes to be paid.

### FINDINGS OF FACT

1. The American Pottery Company was formed in 1942. It was located at Marietta, Ohio and engaged in the manufacture and sale of pottery and related products.

2. In 1958 Robert J. Braden purchased from the company the land and plant utilized for the manufacture of pottery. In 1961 he purchased the company's equipment and on October 2, 1961 Braden acquired all of its issued and outstanding stock. Upon purchase of the stock Braden was elected Chairman and President of the Board and Klipple was elected General Manager.

3. On May 7, 1962, Braden hired John F. Bonistall as president and general manager of American Pottery Company. Bonistall on the date he was hired by Braden was president, general manager, and sole shareholder of Terrace Ceramics, Inc., a corporation engaged in the marketing of pottery and related products nationally.

4. The May 7, 1962, agreement provided that Bonistall would be added to the board of directors of American Pottery Company; that Braden would resign as president; that Bonistall would be elected president; that his salary would be $1,500 a month; that his principal duty would be all sales and general management policy as to lines of manufacture; and that he could market all products of the American Pottery Company through Terrace Ceramics, Inc. At a meeting of the shareholders and directors of the company held on August 23, 1962, Braden resigned as president and Bonistall was named president, a director, and general manager of the corporation. When Bonistall assumed the duties as director, president and general manager the previous general manager Klipple left the employ of the company.

5. The company maintained three checking accounts—a payroll account, a treasurer's account and the regular account. The payroll account was utilized for paying all other bills, including taxes. Bonistall was the only person authorized to sign the payroll checks and treasurer's checks could be signed by either Bonistall or Braden. The regular checking account required two signatures and Braden, Bonistall and Roach were authorized to sign checks on that account.

During the quarters in issue (the last quarter of 1963 and the first two quarters of 1964) most of the checks drawn on the regular account were signed by Bonistall and Roach, with Braden signing checks only when Bonistall was out of town or otherwise unavailable. After Bonistall left the company, for several months Braden signed all of the checks written on the regular account.

6. From May, 1962 until July 1, 1964 *Bonistall* as president and general manager had complete control of the corporation. The evidence is clear in this respect according to the testimony of Braden and Roach; also agreements and letters to Mr. Goodfriend in connection with the securing of a loan. He hired and fired administrative and supervisory personnel; assisted in negotiating a factoring arrangement with Walter Heller & Company; appointed himself also as plant manager; had authority to sign checks for the payment of employees, taxes and other creditors. Because of his prior business experience with this company he was aware of the corporate obligation to withhold taxes and to pay over those taxes to the United States. Bonistall further was responsible in determining which creditors would be paid.

7. In the period in issue from October 1, 1963 to June 30, 1964 *Braden* was treasurer and chairman of the board of the company. As treasurer he was in charge of all money, bills, notes, bonds and similar properties of the corporation and was authorized to sign all checks and keep such financial accounts as might be required. He financed the operations of the corporation, making substantial advances to it. The amounts payable by Braden were as follows:

| | |
|---|---|
| 1961 ............ | $ 73,000.00 |
| 1962 ........... | 306,038.30 |
| 1963 ........... | 423,038.30 |
| 1964 ........... | 470,312.20 |

Braden did not work for the company on a full time basis but visited the premises on an average of three times a week for approximately two hours per visit and sometimes discussed the company's finan-

ces with the officers. Braden furnished the money when the corporation needed funds and was the person that decided that American Pottery Company would factor its accounts receivable through Walter Heller & Company and negotiated the financing agreement with that firm. He engaged in negotiations with William Goodfriend concerning a loan to the corporation and at all relevant times had the authority to sign checks on the regular and treasurer's checking accounts. He exercised control over the corporation in other areas such as hiring an efficiency expert, designing and remodeling the production line and shipping area, making the decisions concerning construction of these improvements, spending considerable time at the plant in connection with the efforts to automate, kept abreast of the corporation's operations through reports which were mailed to him when he was in Nevada, directed that the corporation make certain payments to Grindley, slowed down production when sales were unable to stay ahead of production, and fired Bonistall and appointed a new president and general manager.

8. Subsequent to July 1, 1964, the date on which Bonistall was fired, Braden spent more time at the company's office and on a more regular basis than prior to his Nevada trip. For several months thereafter, all of the checks issued on the regular checking account were signed by him. Corporate bills were paid in the same fashion as when Bonistall was president, except Braden assumed the duties previously performed by Bonistall. Thus, every week to ten days Roach gave Braden the invoices and bills to be paid and Braden directed that some of the bills be paid immediately and that payment on the others be deferred. In addition, when suppliers contacted Braden in an effort to receive payment, he promised to pay them as soon as possible and directed Roach to pay these accounts as soon as the corporation had funds. Braden rehired Grindley who was made vice president and a director, and Braden's son-in-law, Frank Crumbly, was elected to the board of directors and appointed assistant to the vice president. Moreover, accounts receivable of the corporation were factored through Braden Drilling Company, a proprietorship owned and operated by Braden.

9. Roach, Braden and Bonistall discussed the fact in November and December, 1963 that the company did not have sufficient funds to pay the withholding and social security taxes. Braden advanced to the corporation the funds needed to pay the taxes but they were not paid for the fourth quarter of 1963 and neither were the returns for the next three quarters filed with remittance, showing the following liabilities:

| | |
|---|---|
| 4th quarter of 1963 | $ 9,404.08 |
| 1st quarter of 1964 | 13,630.53 |
| 2nd quarter of 1964 | 10,039.33 |

The company continued to meet its payroll until business operations were terminated in May or June, 1965. The taxes withheld from the wages were placed in a general account and not in an escrow account.

While Bonistall was president and while Braden was president the company had sufficient funds to pay the taxes withheld if either had chosen to do so.

10. On October 28, 1965, the assets of American Pottery Company were sold by the Internal Revenue Service at auction for $30,000.00 and the money was properly applied against unpaid withholding taxes, accrued interest and penalties resulting in the penalty imposed by Section 6672 of the Internal Revenue Code of 1954 in the following amounts:

| | |
|---|---|
| 4th quarter of 1963 | $ 5,277.15 |
| 1st quarter of 1964 | 10,853.52 |
| 2d quarter of 1964 | 7,850.64 |
| | $23,981.31 |

Braden has made payments totalling $11,990.65 and seeks a refund of $116.57. Bonistall has made no payments on this assessment.

## STATUTES INVOLVED

Internal Revenue Code of 1954 (26 U.S. C.):

### SEC. 6671. RULES FOR APPLICATION OF ASSESSABLE PENALTIES.

(a) Penalty assessed as tax.—The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary or his delegate, and shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference in this title to "tax" imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter.

(b) Person defined.—The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

### SEC. 6672. FAILURE TO COLLECT AND PAY OVER TAX, OR ATTEMPT TO EVADE OR DEFEAT TAX.

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

### SEC. 7501. LIABILITY FOR TAXES WITHHELD OR COLLECTED.

(a) General Rule.—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held, to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

■ Section 3102 of the Internal Revenue Code of 1954 requires an employer to withhold social security taxes (F.I.C.A.), imposed on its employees and Section 3402(a) of the Code requires the withholding of income taxes from the wages of employees. The taxes which must be collected or withheld are to be held as a special trust fund for the United States pursuant to Section 7501 of the Code, supra. An officer or employee of a corporation, who is under a duty to collect and pay over taxes withheld from the wages of employees and willfully fails to do so, is liable for the total amount of tax not paid over by reason of Section 6672 of the Code, supra. Although denominated a penalty, the liability imposed by Section 6672 is not penal, but is merely a means of ensuring that the taxes will be paid by shifting the responsibility for payment from the corporation to the person responsible for the nonpayment. Botta v. Scanlon, 314 F.2d 392 (C.A. 2, 1963); Spivak v. United States, 370 F.2d 612 (C.A. 2, 1967); United States v. Graham, 309 F.2d 210 (C.A. 9, 1962).

1. Plaintiff and Third-Party Defendant were responsible officers of American Pottery Company.

■ The issue of which corporate officers are responsible for the payment of taxes withheld from the wages of employees was recently before the Court of Appeals for the Seventh Circuit in Monday v. United States, 421 F.2d 1210 (Jan. 29, 1970). The Court stated:

"Corporate office does not, per se, impose the duty to collect, account for and pay over the withheld taxes. On the other hand, an officer may have such a duty even though he is not the

disbursing officer * * * The existence of the same duty and concomitant liability in another official likewise has no effect on the taxpayer's responsibility. * * * Liability attaches to those with power and responsibility within the corporate structure for seeing that the taxes withheld from various sources are remitted to the Government. * * * This duty is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds. * * * "

Among the specific facts which courts have relied upon in determining whether individuals were persons responsible for the payment of taxes withheld from the wages of employees are:

(1) The duties of the officer as outlined by the corporate by-laws. United States v. Strebler, 313 F.2d 402 (C.A. 8, 1963).

(2) The ability of the individual to sign checks of the corporation. Strebler, supra; Schweitzer v. United States, 193 F.Supp. 309 (D.C.Neb., 1961).

(3) The identity of the officers, directors and shareholders of the corporation. Frazier v. United States, 304 F.2d 528 (C.A. 5, 1962); Scherer v. United States, 228 F.Supp. 168 (D.C.Idaho, 1963).

(4) The identity of the individuals who hired and fired employees. Hair v. United States, 64–1 U.S. T.C., par. 9206 (S.D.Calif., Dec. 30, 1963).

(5) The identity of the individuals who were in control of the financial affairs of the corporation. Horwitz v. United States, 339 F.2d 877 (C.A. 2, 1965); Flan v. United States, 326 F.2d 356 (C.A. 7, 1964).

More than one person can be a responsible officer of a corporation. Monday, supra. It is clear that both Braden and Bonistall were responsible officers of American Pottery Company since both had the duty and authority to see that creditors, including the United States, were paid. Monday v. United States, supra.

2. Plaintiff and Third-Party defendant wilfully failed to pay the taxes withheld from the wages of employees.

The term "willfully" as used in the statute has been defined by numerous court decisions. The recent decision of Monday v. United States, supra, defined the term as follows:

The precise content to be given the concept of "willfulness" varies according to the legal context in which it appears. In criminal statutes, "willfulness" generally requires bad purpose or the absence of any justifiable excuse. United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381. In civil actions, however, these elements need not be present. Rather, willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks.

Despite its denomination as a "penalty" assessment, the statutory liability imposed by Section 6672 is essentially civil in nature. Cash v. Campbell, 346 F.2d 670, 673 (5th Cir. 1965). Its basic purpose is the protection of governmental revenue. Botta v. Scanlon, 314 F.2d 392, 393 (2d Cir. 1963); Spivak v. United States, 370 F.2d 612, 616 (2d Cir. 1967), certiorari denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed. 2d 625. It provides a remedy to prevent the unnecessary loss of tax funds by permitting the "tax authority to reach those responsible for the corporation's failure to pay the taxes which are owing." United States v. Graham, 309 F.2d 210, 212 (9th Cir. 1962); White v. United States, 372 F.2d 513, 516, 178 Ct.Cl. 765 (1967). In light of this purpose, we agree with those courts which have defined willful action under Section 6672 as referring to voluntary, conscious and intentional—as opposed to accidental—

decisions not to remit funds properly withheld to the Government. Spivak v. United States, 370 F.2d 612, 615 (2d Cir. 1967), certiorari denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625; Cross v. United States, 311 F. 2d 90, 94 (4th Cir. 1962); Hewitt v. United States, 377 F.2d 921, 924 (5th Cir. 1967); Flan v. United States, 326 F.2d 356, 358 (7th Cir. 1964); Bloom v. United States, 272 F.2d 215, 223 (9th Cir. 1959), certiorari denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed. 2d 1146; Scott v. United States, 354 F.2d 292, 295, 173 Ct.Cl. 650 (1965). Liability does not depend upon the presence of bad motive or the specific intent to defraud the Government or deprive it of revenue. White v. United States, 372 F.2d 513, 521, 178 Ct.Cl. 765 (1967).

In Bloom v. United States, 272 F.2d 215 (C.A. 9, 1959), the taxpayer was the president and virtually the sole shareholder of the corporation. As a responsible officer of the corporation, he decided not to pay over to the United States the taxes withheld from the employees' wages, but rather to utilize the funds to pay other creditors. The court viewed such conduct as willful.

The books and records of American Pottery Company and its cancelled checks demonstrate that the corporation had sufficient funds to pay the withheld taxes to the Government, but that the funds were paid instead to other creditors. This was also admitted by Roach, the office manager. The funds were sufficient both while Bonistall was president and general manager and after he was fired when Braden took a more active interest in the business.

■ In late 1963, Braden, Bonistall and Roach discussed the fact that the company did not have sufficient funds to pay to the Government the taxes withheld from employees' wages. Subsequently, Braden provided funds to the corporation. Despite the availability of these funds, Bonistall failed to see that the taxes were paid and knowing that the taxes were unpaid, continued to sign checks preferring other creditors over the United States. This constitutes willfulness within the meaning of the statute, as interpreted by the courts.

■ After Braden learned that the taxes had not been paid, he signed checks and determined which creditors should be paid, while the company continued to operate for almost an entire year, always seeing that its payroll was made.

Braden's fiduciary duty to see that the taxes were paid was a continuing one which never ended since the taxes were never paid by the corporation. Despite this duty, Braden was more interested in attempting to protect his investment in American Pottery Company than in having the corporation pay the tax deficiencies. However, as the court stated in United States v. Hill, 368 F.2d 617 (C. A. 5, 1966):

> The desire to continue in business is not justification for violating the trust imposed by law to pay taxes.

All of the money available was used to keep the business going rather than to pay the taxes. Using the trust funds to pay the current expenses of the business cannot be condoned, Carroll v. United States, 67–2 U.S.Tax Cas. ¶ 9656 (S.D. N.Y.1967).

## CONCLUSIONS OF LAW

Robert Braden and John F. Bonistall, officers and directors of the American Pottery Company, at the time in question were responsible officers of said corporation and willfully failed to pay taxes withheld from the wages of employees.

The government shall prepare a judgment entry setting forth that plaintiff's complaint be dismissed and judgment entered against Braden and Bonistall for the amount owing to the United States Government.