**A. Peter SCHERER, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Truman JOINER, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Nos. 3802, 3806.**

United States District Court
D. Idaho, S. D.
Dec. 16, 1963.

Myron E. Anderson, for plaintiffs.

Claude V. Marcus, Boise, Idaho, for plaintiff, Z. Peter Scherer.

Sylvan A. Jeppesen, U. S. Atty., Jim Christensen, Asst. U. S. Atty., Boise, Idaho, Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Jerome Fink, John M. Bray, Attys., Dept. of Justice, Washington, D. C., for defendant.

CHASE A. CLARK, Chief Judge.

These are actions brought by taxpayers, J. Peter Scherer, Cause number 3802, and Truman Joiner, Cause number 3806, for a refund of a portion of a penalty, plus interest, assessed against the plaintiffs. Such penalties were levied on the grounds that plaintiffs were responsible persons under a duty to withhold, collect, and pay over F.I.C.A. taxes and withholding taxes of Lucky Custer Mining Corporation, within the meaning of Sec. 6672, I.R.C.1954, and who failed to do so. The Government has filed its counterclaim for the remaining unpaid portion of the assessment, plus interest.

The matter was tried before the Court without a jury. Witnesses were sworn and examined, exhibits introduced and admitted and the cause submitted. Briefs have been filed by the respective parties and the Court has fully considered the same.

Scherer, by occupation an accountant, was Treasurer and Secretary of the Lucky Custer Mining Corporation, and owner of 119 shares of stock out of a total stock issue of 55,283 shares.

Joiner is Comptroller for Morrison-Kundsen Company of Boise and acted as President and Director of Lucky Custer. He owned 1,000 shares of stock. He had nothing to do with the books and records but occasionally he deposited his own funds to the corporation's account in order to meet expenses. There were considerable advances amounting to some $63,000.00. The mining operation was run by a mine manager. The manager had authority to hire and lay off help, incur expenses and write checks.

The record shows that Lucky Custer Mining Corporation was incorporated in the fall of 1952 and the mining operation closed down in July of 1955. Scherer was one of the incorporators and was a director and Secretary-Treasurer throughout the entire period. The office address of Lucky Custer was Scherer's office. All bills of Lucky Custer came across his desk for payment. Scherer also performed work for Lucky Custer in his professional capacity as accountant. Scherer signed Form 941, Employment Tax Return, that was filed for Lucky Custer. For the most part the corporation's checks were signed by him.

Scherer knew the taxes were not being paid. He testified that he paid the bills directed by the Board of Directors but that he had authority to draw the checks to cover specific items of expenditures as it was impossible for the Board to meet and authorize payment of each specific bill. From this he contends that he had no authority to pay the taxes in controversy here.

While Joiner was not as close to the heart of this matter as was Scherer, the record does show that he was familiar

with the need for payment of these taxes; that he learned very shortly after assuming the duties of President that these F.I.C.A. and withholding taxes of Lucky Custer Mining Corporation were not being paid over to the Government.

He also was a director and was President of the Company. His name was on the signature card of Lucky Custer at Idaho First National Bank and he could write checks when the occasion presented itself.

The fact of the matter is that these taxes were not paid because these men hoped that they might strike a bonanza at the mine and should that happen then the Government would get its money; but, in the meantime, they used every cent available to keep the business going rather than pay over the taxes. As had been pointed out by other courts, this is the usual thing in companies who are going broke and using deficit financing.

The Court feels this case is very similar to the case of Bloom v. United States (9th Cir.) 272 F.2d 215. Bloom was the corporation's founder, virtually sole stockholder and was its President and chief executive officer. He was in charge of the entire operation, made final decisions and decided what creditors were to be paid and not paid.

In this case Scherer and Joiner were the chief executive officers of the corporation and active members of the Board of Directors with whom the ultimate authority of the corporation rested. The Board had the final say under the corporate by laws providing for corporate management arrangement. Whether or not the Board had or had not delegated control of the payment of the corporation's tax debt, the fact remains that Scherer and Joiner did control the matter of payment or non-payment. The entire record reveals that any action recommended or not recommended or authorized by the Board of Directors was whatever Scherer and Joiner advised or did not advise. They were, in reality, running the corporation and its Board of Directors. They had the ultimate authority.

There is no question in these cases as to what Scherer's and Joiner's knowledge was with respect to the unpaid taxes, or what they did or failed to do in regard to their payment. Their failure to pay over monies to the Government was willful with knowledge that the sums were due and owing.

In the case of United States v. Graham (9th Cir.) 309 F.2d 210, at page 212, the Court said that the word "person" as appears in the statute "does include officer and employee, but certainly does not exclude all others. * * * In our judgment the section must be construed to include all those so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred. * * *

"The statute's purpose is to permit the taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing."

As to the question of the waiver executed by plaintiffs, the Court is of the opinion that the waiver signed by plaintiffs was effective to extend the Statute of Limitations and therefore the assessment was timely. The statute contemplates a penalty may be assessed against more than one person where they are persons within the meaning of the statute, and therefore the assessment against plaintiffs does not constitute assessment of a 200% penalty.

The evidence is insufficient to establish any agreement with plaintiffs in the application of the proceeds from the forced seizure and sale of the corporate assets, and therefore there could be and was no violation of such agreement as contended by the plaintiffs.

Judgment shall be entered in favor of the defendant and against the plaintiff in each action of the Plaintiff's Complaints therein; and judgment shall be entered in favor of the Defendant on its counterclaim in each case.

Counsel for the United States may prepare Findings of Fact and Conclusions of Law and Judgment in accordance with the rules of this court.