**Carl GARNETT, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 1648.**

United States District Court, E. D. Kentucky, Covington Division.

Sept. 27, 1974.

Adams, Brooking & Stepner, Covington, Ky., for plaintiff.

Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., for defendant.

## MEMORANDUM

SWINFORD, District Judge.

This action commenced against the United States pursuant to 28 U.S.C. § 1346(a)(1) seeks a refund of sums paid in partial satisfaction of penalties assessed against a corporate officer for failure to pay federal taxes withheld from employee wages.

> "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672.

Late in 1964, Garnett was elected vice-president and general manager of the Tasty Foods Company, Inc., an enterprise devoted to the processing and packaging of frozen foods. The company began experiencing financial difficulties soon thereafter and ultimately ceased operations in June, 1965. Although Tasty properly deducted income and social security taxes from its employees' wages, 26 U.S.C. §§ 3102 and 3402, the Company was unable to pay the amounts withheld for the first and second quarters of 1965. On April 25, 1967, a penalty was assessed against Garnett as an officer charged with collecting and paying over amounts deducted from wages. This action was subsequently commenced to recover $885.01 paid in partial satisfaction of the assessment; the Internal Revenue Service has counterclaimed under 26 U.S.C. §§ 7401 and 7403 for the unpaid balance of $12,124.11. Trial was held on July 27, 1973, and the record is before the court for decision.

The plaintiff apparently does not contend that his conduct was not "willful" as contemplated by Section 6672; such a position would be unavailing in view of the admission that Garnett was aware of the impending tax liability. See Braden v. United States, 6th Cir., 442 F.2d 342, 344 (1971), cert. denied 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971); Monday v. United States, 7th Cir., 421 F.2d 1210 (1970), cert. denied 400 U.S. 821 (1970); Newsome v. United States, 5th Cir., 431 F.2d 742, 746 (1970); Annot., 22 A.L.R.3d 8, Section 5. Rather, the sole controverted issue is whether the plaintiff is a "person required to . . . truthfully account for, and pay over any tax imposed . . . ." 26 U.S.C. § 6672. Garnett admits that his authority as vice-president and general manager embraced daily factory operations, but argues that his power to satisfy the tax liability was precluded by corporate resolutions predicating disbursements exceeding $5,000.00 upon the assent of the corporation's board of directors or three-member "executive committee" and requiring two signatures for withdrawal from the firm's "general account". Although advised of the impending due date, the other directors thwarted Garnett's attempts to pay the amount owing. Further, the plaintiff's initial investiture of broad managerial authority was eroded with the worsening corporate financial profile; thus, the board in 1965 retained James Monroe as a consultant in an effort to improve the company's profits. Monroe's authority effectively divested plaintiff of the responsibilities initially exercised.

■■■ While the plaintiff's presentation was appealing, the court must agree with the defendant that Garnett possessed sufficient authority for the imposition of the 100% penalty; an individual assessable under 26 U.S.C. § 6672 need not wield exclusive domain over the affairs of a business:

"Corporate office does not, *per se,* impose the duty to collect, account for and pay over the withheld taxes. On the other hand, an officer may have such a duty even though he is not the disbursing officer. . . . The existence of the same duty and concomitant liability in another official likewise has no effect on the taxpayer's responsibility. . . . Liability attaches to those with power and responsibility within the corporate structure for seeing that the taxes withheld from various sources are remitted to the Government. . . . This duty is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds. . . ." Monday v. United States, supra, 421 F.2d at 1214–1215.

In Braden v. United States, S.D.Ohio, 318 F.Supp. 1189 (1970), aff'd 6th Cir., 442 F.2d 342 (1971), cert. denied 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971), the district court adopted guidelines for identifying "responsible" corporate officials; the five stated criteria essentially relate to the degree of administrative and financial control exercised by the putative assessee. The record reflects Garnett's pervasive involvement in both realms.

The corporate minutes clearly vest the general manager with exclusive authority over plant operations:

"Said General Manager shall assume all responsibility for the operation of the business of the corporation and shall have such duties as may be designated by the Board of Directors.

He shall agree to devote all of his time, skill and ability to the interests of the corporation and shall not engage in any other business or enterprise during such time except with the consent of the Board of Directors of the corporation." Minutes of Tasty Foods Company Board of Directors Meeting of November 11, 1959.

During the ensuing period Garnett rendered daily operational decisions and assumed complete responsibility for personnel decisions. The broad grant of authority was consistent with the relatively passive managerial role played by the other directors. Garnett as the only salaried board member was similarly the only stockholder to devote full time to the enterprise, Transcript, pp. 34–35; by contrast, the other owners were engaged in separate pursuits which permitted only sporadic attention to the affairs of Tasty Company. The contention that Garnett's responsibilities were sharply curtailed by employment of an independent consultant was directly rebutted by testimony that Monroe functioned solely as an advisor. Transcript, p. 51. Every witness with the exception of Garnett testified that the general manager exercised exclusive managerial control, hired and fired employees and assumed complete responsibility for the factory operations.

■ The limitations upon the plaintiff's control over corporate financial affairs is not sufficient to abrogate liability. While the absence of unfettered disbursing authority is a relevant consideration, the courts have generally minimized the impact of such formal distinctions:

> "Were we to hold . . . that lack of individual authority to sign corporate checks insulated Brown from liability—we would surely open the door to protective co-signing arrangements. The effect of such a holding would tend to emasculate section 6672." Brown v. United States, 5th Cir., 464 F.2d 590, 591 (1972), cert. denied 410 U.S. 908, 93 S.Ct. 962, 35 L.Ed.2d 270 (1973).

Rather, liability is predicated upon the existence of "significant" rather than ultimate fiscal control, Turner v. United States, 9th Cir., 423 F.2d 448, 449 (1970), over routine business decisions addressing " 'what bills or creditors should . . . be paid and when'." White v. United States, 372 F.2d 513, 516, 178 Ct.Cl. 765, 1967); Dudley v.

United States, 9th Cir., 428 F.2d 1196 (1970); Hewitt v. United States, 5th Cir., 377 F.2d 921 (1967); Scherer v. United States, D.Idaho, 228 F.Supp. 168 (1963), and the company payroll. Flan v. United States, 7th Cir., 326 F.2d 356 (1964); Braden v. United States, 318 F.Supp. at 1194; see Annot., 22 A.L.R.3d 8. The general manager was intimately associated with the financial affairs of the corporation. While not permitted to withdraw funds from the general account or make large disbursements without approval or cosignature, the testimony clearly reflected Garnett's control over the payroll and daily disbursements. The plaintiff's responsibility for sums deducted from wages was demonstrated through testimony by the corporate president that in February, 1964, the general manager was instructed to establish a trust fund to insure that company money would no be commingled with amounts withheld from employees. Acknowledging such instructions, the plaintiff was unable to remember whether such an account had been created. Transcript, p. 39. Indeed, Director Charles F. McKenna resigned on April 9, 1965, upon discovering that Garnett was using the trust money for operating capital. Plaintiff's Exhibit 3.

The contention that the plaintiff was unable to procure authorization for the tax was rebutted by evidence that the other directors were not approached by Garnett and were, in fact, ignorant at that juncture that the funds were unavailable. See Transcript, p. 98. A finding of awareness on the part of the other directors would be unavailing in any event: "The existence of the same duty and concomitant liability in another official likewise has no effect on the taxpayer's responsibility." Monday v. United States, supra, 421 F.2d at 1214; Braden v. United States, 442 F.2d at 343; White v. United States, supra, 372 F.2d at 516; United States v. Graham, 9th Cir., 309 F.2d 210 (1962). Further, Garnett's duty under the Code was breached not merely upon

non-payment but also when he permitted the use of the funds for operating expenses.

"Once taxes are collected they become a trust fund in the hands of the employer. 26 U.S.C. § 7501. The liability for payment of taxes collected arises upon the collection of those taxes and not at the date when the statute requires that they be paid over to the government. . . ." Long v. Bacon, S.D.Iowa, 239 F.Supp. 911, 912 (1965).

See also Mueller v. Nixon, 6th Cir., 470 F.2d 1348 (1972), cert. denied 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973); Newsome v. United States, supra, 431 F.2d at 746.

The plaintiff's usurpation of withheld "trust funds" for daily factory operations reflects the reasons underlying the harsh penalty exacted by Section 6672: "Absent stringent measures to protect these funds, they might easily be available to finance a business which was in a hazardous or failing condition. . . ." Mueller v. Nixon, supra, 470 F.2d at 1351.

Judgment will be entered dismissing the complaint and awarding recovery of the assessed amount under the counterclaim of the United States.