In re Leonard GREEN and Marilyn
Green a/k/a Marilyn S.
Green, Debtors.

Bankruptcy No. 85–04669.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 8, 1988.

Joseph M. Davidson, Philadelphia, Pa., for debtor.

Henry S. Friedman, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for IRS.

Edward Sparkman, Philadelphia, Pa., trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant dispute concerning the Debtors' objections to certain Proofs of Claims filed by the Internal Revenue Service (hereinafter referred to as "IRS") is longstanding and pivotal to the fate of the joint Debtors' Chapter 13 Plan. Upon the reversal and remand of our Orders refusing to reconsider denial of the Proofs of Claims on equitable grounds, we are compelled to rule against the Debtors on the underlying merits of the Claims, as amended. However, we cannot rule on the issue of whether the IRS should be permitted to file a late claim, given the piecemeal state of the record and a directive from the Court of Appeals, subsequent to the remand of this case, regarding the exclusive method of consideration of late-filed claims in *In re Vertientes, Ltd.*, 845 F.2d 57 (3d Cir.1988).

We shall also give the Debtors an additional, brief opportunity to prepare a feasible Plan. However, if they are unable to successfully do so, all that appears to remain are alternatives which appear to require dismissal of the case. It is unfortunate to see the Debtors' efforts go for naught. For this reason, we devote our efforts to producing herein an Opinion which carefully defines the limited options remaining open to them in rendering our decision.

The Debtors' joint Chapter 13 case was filed on November 1, 1985, and originally assigned to former Chief Judge Emil F. Goldhaber. The meeting of creditors was first scheduled on January 8, 1986; hence the bar date for filing claims was established as April 8, 1986. Bankruptcy Rule (hereinafter referred to as "B.Rule") 3002(c). The record reflects that, in the early stages of the case, disputes arose first between the Debtors and the first mortgagee on their residence and thereafter between the Debtors and another of their secured creditors, Alan Bloom. Both matters were apparently resolved in spring, 1986. However, confirmation of the Plan was denied on May 6, 1986, probably due to the emergence of a claim filed against the Debtors by a business entity called Affairs with a Flair (hereinafter referred to as "Affairs").

On October 1, 1986, the IRS compounded whatever problems resulted in denial of confirmation by filing an unsecured priority claim in the amount of $54,053.37. On October 29, 1986, the Debtors filed Objections to that Proof of Claim of the IRS and also to the claim of Affairs. It should be noted that Affairs was itself a debtor in this court, Bankr. No. 81–01256K, in a case assigned to the undersigned.

On January 6, 1987, the confirmation hearing (listed for the seventh time) and the above-mentioned Objections were listed before the Honorable Bruce Fox, who had succeeded Judge Goldhaber, and was assigned this case. Apparently the dispute with Affairs was reported settled at that time, as we note that a Stipulation with the Trustee of Affairs was filed on January 30, 1987. No one appeared for the IRS. After a brief colloquy, in which it was ascertained that the Debtors had served the

IRS's special procedures branch with the Objection,[1] Judge Fox agreed to sustain it.[2]

Apparently due to a delay by the Debtors' counsel in preparing and dispatching proposed Orders to Judge Fox, no Orders regarding the Objections were entered until April 21, 1987. On that date, Judge Fox entered an Order reducing the claim of Affairs from $55,000.00 to $5,000.00 by agreement of counsel and an Order disallowing the IRS claim in its entirety.

Four continuances of the Confirmation hearing (now up to eleven) later, the Debtor filed an Application to Judge Fox to transfer the case to the undersigned, purportedly because of its relation to the Affairs case. This reference is difficult to understand, because, at that time, it appeared that all of the Debtors' differences with Affairs had been resolved. However, on June 5, 1987, Judge Fox granted the Application.

On August 21, 1987, the IRS filed a motion requesting us to reconsider Judge Fox's Order of April 21, 1987. On August 26, 1987, the Confirmation hearing was listed for the twelfth time overall, but for the first time before us. A motion to allow the Debtors to enter into a financing agreement to fund their most recent Amended Plan, which had been noticed to all creditors without objection, was presented on August 26, 1987. Upon the filing of a Certification of no objection, we entered an Order granting this motion on August 28, 1987.

On August 21, 1987, and September 21, 1987, the IRS filed Amended Proofs of Claims designating unsecured priority claims of $26,253.87 against both Debtors and $1,525.63 against the Wife–Debtor only. On October 2, 1987, the Debtors objected to these Amended Proofs of Claim.

The Motion of the IRS to reconsider the April 21, 1987, Order came before us for a hearing on October 7, 1987. It appears that this hearing was transcribed for the first time at our request *after* the remand of the matter from the District Court on July 11, 1988. At that hearing, the IRS indicated that it would present no testimony. Its counsel did not dispute that the IRS received "these papers" (it is not clear which) in connection with the Debtors' Objection to its first Proof of Claim, although no evidence of what notices were received and when they were received was established. Relying strictly upon Federal Rules of Civil Procedure (hereinafter "F.R. Civ.P.") 60(b)(4) and 60(b)(6), incorporated, for the most part, into this proceeding by B.Rule 9024, counsel for the IRS argued, but presented no evidence, that the United States Attorney and the Attorney General had not been served with the Debtors' Objection to its claim, as required by B. Rules 9014 and 7004(b)(4).

In the course of the colloquy, we posited that, even had the IRS been properly served, it would have had difficulty sustaining its claim because its original Proof of Claim was filed well beyond the bar date. The only response of IRS' counsel to this assertion on October 7, 1987, was that "it may be that the reason that our proof of claim was filed on [sic] October was that perhaps the Debtors had not filed tax returns...." (Transcript, at 6–7). In response to this argument, we indicated that we had previously held, in *In re Owens*, 67 B.R. 418 (Bankr.E.D.Pa.1986), that this factor would not excuse a late filing.[3]

1. Correspondence attached to the later filings by the Debtors included notices to "E. Epstein, Supervisor of Procedures and Insolvency Unit, 600 Arch St., P. O. Box 12051, Philadelphia, Pa. 19105" on each of the two occasions that this hearing was continued. 600 Arch Street is a building adjoining our court house.

2. Ominously and, as it developed, clairvoyantly, Judge Fox stated to the Debtors' counsel at the hearing: "I would guess, counsel, that is not going to be the end of the matter. I just have a feeling."

3. At the time of the hearing, an appeal of the *Owens* decision was pending before the District Court. After the District Court's decision in this case, that decision was affirmed on March 10, 1988. *See United States v. Owens*, 84 B.R. 361 (E.D.Pa.1988). In affirming, the District Court held that pre-petition taxes for which no return had been filed until after the filing were pre-petition claims dischargeable in the Debtor's Chapter 13 case. *Id.* at 364 n. 5. This was in contrast to our holding that the IRS's claims against the *Owens* Debtor were post-petition claims,

Near the end of the October 7, 1987, colloquy, we indicated our intention to deny the IRS's motion because its delay in filing the motion for reconsideration from at least April through August had unfairly prejudiced both the Debtors and their other creditors, who hoped to be paid with the financing now obtained by the Debtors to fund their Plan.[4] We encompassed our result in a perhaps too brief Order and Memorandum filed October 8, 1987. In that document, we declined to apply F.R.Civ.P. 60(b)(4), relative to "void" judgments, holding that, under the circumstances, the Order of April 21, 1987, was merely "voidable." Given the equities, the result in *Owens* on the merits of the untimeliness of the filing of the IRS' claim, and an expressed hope that the Plan of the Debtors could now be confirmed at its thirteenth listing on October 15, 1987, we denied the IRS' motion for reconsideration of the April 21, 1987, Order striking its claim.

On October 19, 1987, the IRS appealed our Order of October 8, 1987, to the District Court, where it was assigned to the Honorable Donald W. VanArtsdalen. The presence of IRS's Amended Proof of Claim, filed on September 21, 1987, and not affected by the April 21, 1987, Order, continued to render the Plan unconfirmable as of October 15, 1987. On November 5, 1987, we heard the Debtors' Objection to the Amended Proof of Claim as well as the fifteenth continued Confirmation Hearing. We granted the Debtors' Objection in an Order of November 9, 1987, after an uneventful colloquy in which we indicated that consistency with our Order of October 8, 1987, required this result. However, we also learned that a further continuance of the confirmation hearing was necessary to resolve matters with the Debtors' mortgagee in light of the refinancing agreement.

After yet another continuance, we proceeded, at the seventeenth continued hearing on January 7, 1988, to confirm the Debtors' Plan. In so doing, we denied a motion of the IRS to stay our Orders of October 8, 1987, and November 9, 1987, in light of the appeals that the IRS had now filed to both of these Orders. We stated that it was not our policy to stay confirmations simply because appeals were pending (particularly, we might add, when we had continued the Confirmation hearing on sixteen prior occasions). We invited the IRS to seek a stay of our Orders from the district court, although we did state that we would be likely to "reconsider the confirmation" if the IRS prevailed on appeal. The Debtors' counsel agreed that such a disposition, i.e., "reconsideration of confirmation," would be appropriate. No appeal from the entry of the confirmation order was filed.

This period of apparent resolution lasted until February 3, 1988, when Judge VanArtsdalen, in a Bench Opinion after oral argument by the parties, recited an intention to reverse our Orders of October 8, 1987, and November 9, 1987. The principal ruling by the District Court was that, in the absence of service of the Objection to the Proof of Claim on the United States Attorney or the Attorney General, the Order of April 21, 1987, was void, not merely voidable. Finding that the record did not establish service on these parties or that the IRS was aware that the Debtors had not adhered to the service requirements required, the matter was remanded to us for a hearing on the merits.

which would not be dischargeable in bankruptcy. 67 B.R. at 424–25. The District Court decision in *Owens* therefore held the IRS to strict adherence to bar dates in filing claims even though the result was an elimination of such claims entirely.

**4.** In the colloquy, we indicated that our approach may have been different had the IRS moved *promptly* for reconsideration of the Order. Transcript, at 4. We expressed concern that if we ruled that the service problem rendered the Order void, it would jeopardize the finality of a great number of confirmed plans, to the great detriment of many debtors and creditors. *Id.*

Furthermore, it appears that the IRS' delay may possibly not be properly measurable by the "mere" four months between April 21, 1987, and August 21, 1987, but from late October, 1986, when it was apparently first notified of the pendency of the Objection to its Proof of Claim, until August 21, 1987, a period of almost *ten* months.

Turning briefly to the issue that the IRS' claim was, in any event, untimely, the court held, Transcript of Bankruptcy Appeal, February 3, 1988, at 25, as follows:

> There has also been an issue raised that the claim was filed late, or after the bar date. Because the IRS was not listed, or the government was not listed, as a creditor, no notice of the bar date was ever sent to the IRS or to the Attorney General or the U.S. Attorney for this district. And, therefore, [sic] had no reason to know of the bar date. It has been suggested that, having filed the late claim, that at least the Government should have complied with Rule 3002.1 [sic], which provides that the Government may file a motion to file after the bar date. In response to that, of course, in the first instance, there's no evidence that it was aware of the bar date, even as of the time that it filed it's Proof of Claim. Secondly, the Supreme court of the United States held, in *The City of New York v. New York, New Haven and Hartford Railroad Company*, 344 U.S. 293 [73 S.Ct. 299, 97 L.Ed. 333] in 1953, that a claimant may not be barred from asserting it's [sic] claim where it has not received any notice of the bar date. And it would appear to me that, from that, even if the Court might have otherwise have some discretion as to whether to allow the filing of a late claim that, where a claimant has not received notice of the bar date, the claimant can not be precluded from asserting that claim.

The Standing Chapter 13 Trustee, present at the proceedings, raised a question as to how the court's disposition affected distribution to creditors under the Confirmation Order. In response, the District Court apparently indicated that "the confirmation has to be stayed." *Id.* at 27. The Order issued by the District Court, dated February 12, 1988, prepared and submitted by the IRS to the district court at its request to reflect its rulings on February 3, 1988, thus stated that "confirmation of the plan is stayed" pending disposition of the IRS's claim on remand.

We have several difficulties in interpreting the mandate of the District Court.

First, it purports to stay a Confirmation Order which was not only already entered, but was not itself appealed. Secondly, it makes references to "the record." *Id.* at 18, 23, 24. The record of the matters on appeal from Orders of these dates is the transcripts of the hearings of October 7, 1987, and November 5, 1987, not the Debtors' entire case file. *See In re Aughenbaugh*, 125 F.2d 887, 889 (3d Cir.1942). Nothing in the way of evidence was so much as offered at either of these hearing. *Compare In re Nicolet*, 80 B.R. 733, 742–44 (Bankr.E.D.Pa.1987) (express offer of entire case file into evidence at a hearing is improper). Thus, technically, there is no evidence as to how the IRS was in fact served with the Objection or what the parties who were in fact served did when they received the Debtors' Objection in the record. There is also no evidence that the IRS was not provided with notice of the bankruptcy filing prior to the bar date. Moreover, in the pre-remand proceedings in this court, the IRS never so much as claimed, by motion or any less formal method, that it was not provided with notice of the bankruptcy filing, or that this was justification for its late claim.

■ We are of course bound to adhere to the District Court's mandate on remand. The District Court apparently accepted the concessions of the Debtors' counsel at oral argument as tacit admission that neither the United States Attorney nor the Attorney General was served with the Objection. Thus, it concluded that no evidentiary remand was necessary to resolve the issue that the Order of April 21, 1987, was void and must be stricken. Therefore, that issue appears closed.

However, we believe that the issue of whether the IRS should be permitted to file a late claim, beyond the bar date, remains open. We reach this conclusion for several reasons.

First, no record as to this issue was presented to the District Court. The passage from the District Court's Bench Opinion, quoted at page 470 *supra*, appears to be presented merely in the spirit of point-

ing out that the IRS may have had a good reason for the late filing, and that therefore the decision to deny the claim could not rest on that issue alone. This issue is not mentioned in the court's Order. We therefore do not interpret the District Court's order as foreclosing all discussion on the timeliness issue after remand.

We note that the only authority cited by the District Court in this passage, *City of New York v. New York, N.H. & H.R.R.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), does not resolve the question presented here. The narrow question presented here is the right of the IRS to share in the assets of the Debtor's present estate, not whether the IRS will be foreclosed from raising its claim against the Debtors forever. The latter consideration *was* the issue in *New York, supra,* where the Court held that "even creditors who have knowledge of a reorganization have a right to assume that their statutory 'reasonable notice' will be given them before their claims are forever barred." *Id.* at 297, 73 S.Ct. at 301. Moreover, here, there was an intervening Confirmation Order, entered with the tacit approval of several other creditors after negotiating their rights with the Debtors. The rights and interests of these creditors, as well as the interests of the Debtors, will be uprooted by our vacating of the Confirmation Order.

■ The IRS argues that the District Court's Order of February 12, 1988, staying the Confirmation Order effectively requires us to vacate that Order. We disagree. A stay or supersedeas, under Pennsylvania law, is subject to "the general rule that a supersedeas may not operate retroactively." *Westmoreland Casualty Co. v. Workmen's Compensation Appeal Bd.,* 32 Pa.Cmwlth. 492, 500, 379 A.2d 1080, 1084 (1977). Resort to the law of the state of the entry of judgment is appropriate to resolve the issue of the impact of a supersedeas order upon the finality of a judgment. *See Coclin Tobacco Co. v. Griswold,* 408 F.2d 1338, 1342 (1st Cir.1969); *In re Walton Plywood,* 227 F.Supp. 319, 322–23, 325–26 (W.D.Wash.1964); and *In re Chong,* 16 B.R. 1, 3–4 (Bankr.D.Hawaii

1980). The District Court's Order did not and could not, therefore, invalidate our Confirmation Order of January 7, 1988. Moreover, the District Court did not appear to anticipate such an extraordinary impact of its stay order. Rather, it appeared to have issued its Order in response to an inquiry of the Trustee concerning distribution, and to have anticipated only that distribution pursuant to the Confirmation Order would be stayed by its mandate.

The limitations of the *New York* holding are emphasized in *In re International Resorts, Inc.,* 74 B.R. 428, 430 (Bankr.N.D. Ala.1987). There, a creditor was omitted from the debtor's schedules and received no notice of the bar date, as the IRS has alleged but has not proven here. The court distinguished *New York* in denying the creditor's motion to file a late claim, holding that the creditor would have other means at its disposal to collect its claim and hence had not lost any property rights through lack of notice. Similar reasoning was applied to similar facts in *In re Chirillo,* 84 B.R. 120, 122–23 (Bankr.N.D.Ill. 1988). The court there pointed out that, by omitting the creditor in issue from his Schedules, the debtor precluded a discharge of the debt owed to the omitted creditor under 11 U.S.C. § 523(a)(3).

Also confronting the IRS is the principle that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the creditor is provided for by the plan, ..." 11 U.S.C. § 1327(a). Thus, a confirmation order has a *res judicata* impact on the rights of debtors and creditors *inter se. See, e.g., In re Gronski,* 86 B.R. 428, 431 (Bankr.E.D.Pa.1988); *In re Bonanno,* 78 B.R. 52, 55–56 (Bankr.E.D.Pa. 1987) (FOX, J.); and *In re Flick,* 14 B.R. 912, 918 (Bankr.E.D.Pa.1981) (TWARDOWSKI, J.).

Despite the presence of the foregoing principles and authority, we recognize the existence of possibly controlling authority to the contrary. In *In re Harbor Tank Storage Co.,* 385 F.2d 111, 112–16 (3d Cir. 1967), our local Court of Appeals, in construing the Bankruptcy Act, held that, despite a confirmation order, a creditor not

receiving notices of, *inter alia,* the bar date and confirmation hearing, could not be barred from filing a late claim. *Accord, Reliable Electric Co. v. Olson Construction Co.,* 726 F.2d 620, 622–23 (10th Cir. 1984) (follows *Harbor Tank* in construing Bankruptcy Code); and *In re Intaco Puerto Rico, Inc.,* 494 F.2d 94, 96–99 (1st Cir. 1974) (Act case).

We are therefore constrained to conclude that we find at least a probability that the IRS would succeed in convincing us that it was entitled to file a late proof of claim in this court. We shall therefore address two additional general issues: (1) The procedural difficulty which we perceive in the IRS' failure to request leave to file a late proof of claim; and (2) The validity of the IRS' proof of claim on its merits. Because we find that the claim does have substantive merit, we are compelled to set out the procedure which the IRS must follow to have its claim properly presented to and sustained in this court and possibly require us to overturn the Confirmation Order.

■ Subsequent to the District Court's Order of February 12, 1988, the Court of Appeals issued a definitive Opinion addressing the procedure for filing and determination of a creditor's right to file late claims in *Vertientes, supra.* There, modifying its previous holdings interpreting the Bankruptcy Act in *In re Pigott,* 684 F.2d 239 (3d Cir.1982), the Court held that the current B. Rules alone govern the procedures for filing untimely claims. 845 F.2d at 59. More precisely, the Court held that B. Rule 3003(c)(3) applied exclusively in such instances, and that bankruptcy court could exercise its discretion to allow a late claim only if one of the following alternatives of B. Rule 9006(b) were met:

(b) ENLARGEMENT.

(1) IN GENERAL. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

*Accord, Maressa v. A.H. Robins Co.,* 839 F.2d 220, 221 (4th Cir.1988).

Since the bar date has long since passed, the only alternative open to the IRS is the filing of a motion pursuant to B. Rules 3003(c)(3) and 9006(b)(2) attempting to establish that the IRS's failure to file a timely proof of claim was due to "excusable neglect." We would observe that failure to file a claim when the IRS had no notice of the bar date would appear to constitute "excusable neglect." If in fact the IRS had no notice, the Debtors may in fact be forced to refrain from defending against such a motion by the IRS. However, we must, in light of the exclusivity of the procedure outlined in *Vertientes,* require the IRS to file a motion requesting such relief and bear the burden of proving its right to such relief. Also, we will require that it do so within fifteen (15) days of this Order in the interests of bringing this case to some sort of rapid conclusion. In the context of that motion, the Debtors, unless they deem it futile, may wish to argue that *Harbor Tank* does not control this issue in light of the intervening Confirmation Order.

Having set forth our interpretation of the District Court's mandate, we now address the issue which the District Court specifically reserved for us: the merits of the IRS's claim. All of the foregoing issues are discussed in light of our rather easily reaching the conclusion that the IRS's claim must be sustained on its merits. This conclusion rendered the other foregoing discussions necessary.

As of the date of the trial of this matter on remand, i.e., June 15, 1988,[5] the sole

---

5. At this hearing, the parties presented evidence only as to the merits of the IRS's claim, despite our advise to the IRS that we considered the issue of whether their claim could be timely

claim of the IRS, as expressed in a superseding, reduced amended Proof of Claim filed that date, was a $26,263.87 penalty against the Husband–Debtor (hereinafter referred to as simply "the Debtor") only for tax year 1984. This claim was based upon the following two sections of the Internal Revenue Code, 26 U.S.C. §§ 6672(a) and 7501(a), (b), in connection with the Debtor's employment at a company known as Sure Products:

### SEC. 6672. FAILURE TO COLLECT AND PAY OVER TAX, OR ATTEMPT TO EVADE OR DEFEAT TAX.

(a) *General Rule.*—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under Section 6635 for any offense to which this section is applicable.

### SEC. 7501. LIABILITY FOR TAXES WITHHELD OR COLLECTED.

(a) *General Rule.*—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

(b) *Penalties.*—For penalties applicable to violations of this section, see sections 6672 and 7202.

---

filed to still be in issue. The parties disagreed as to whether the district court had determined

The only witnesses at the hearing were both Debtors and Carmela Marrozza, formerly the bookkeeper at Sure Products. The Debtor testified that he served as the Controller of Sure Products from 1980 until 1983, at which time he became President. He acknowledged that he was aware that federal income taxes withheld from employees of Sure Products were not remitted to the IRS, but instead were used to pay other creditors. However, the Debtor contended that all of his significant actions as President were controlled by Charles Henderson and Sidney Sussman, the major stockholders of Sherwood Industries, a company which owned the stock of Sure Products.

The testimony of the Debtor and Ms. Marrozza established that Debtor was actively performing the duties of the chief executive of Sure Produces during his tenure as President, which ended at the pleasure of Mr. Henderson in January, 1985. As such, he had authority, with his wife and daughter, also employees, and Ms. Marrozza, to sign checks. He admittedly had superior authority over all of the other signatories and had authority to hire and fire employees, which he exercised. The Debtor nevertheless claimed that all of his significant foregoing duties were overseen by Mr. Henderson, and that the payments to creditors in preference to the IRS withholding taxes were directed by Mr. Henderson. He epitomized his lack of control by stating that he was never given a key to go in and out of Sure Products' place of business, but was instead let in and out by Mr. Henderson.

At the close of the hearing, we entered an Order allowing the IRS and the Debtor until June 30, 1988, and July 14, 1988, respectively, to file Briefs supplementing those submitted to us at trial on the merits and discussing all of the pertinent issues, including the ramifications of the IRS's late filing of its original Proof of Claim and our subsequent entry of a Confirmation Order.

---

this issue.

■ An important threshold consideration is the relative burdens of proof of the parties in this proceeding. This is proof of claim litigation. In *In re Lewis*, 80 B.R. 39, 41 (Bankr.E.D.Pa.1987), we held that, in the instant scenario where both the claimant and the objector appear and present evidence, "we should render our decision exactly as we would do if we were hearing any sort of adversary proceeding or contested matter, with the claimant in the same position as the party plaintiff or movant." Usually, given this pronouncement, "the burden of proving its case by a preponderance of evidence [is] upon the claimant." *Id.*

However, as the Court of Appeals recently pointed out, even in a bankruptcy context, the taxpayer "retains the burden of demonstrating that the deficiency was incorrect" in a dispute over tax liability with the IRS. *In re Resyn Corp.*, 851 F.2d 660, 663 (3d Cir.1988). The Court had established, in litigation under 26 U.S.C. § 6672 in the past, that the taxpayer "has the burden of proving the assessment was erroneous [citations omitted]." *Psaty v. United States*, 442 F.2d 1154, 1158–59 (3d Cir.1971). *See also, e.g., Sinder v. United States*, 655 F.2d 729, 731 (6th Cir.1981).

There are two key issues which must be addressed in determining whether the Debtor is liable for the 1984 withholding tax liability of Sure Products. The first is whether the Debtor can prove that he was not a person required to "collect, truthfully account for, and pay over" the tax in issue, i.e., that he was not a person "responsible" for the liability. The second issue is whether the Debtor can prove that his actions were not done "willingly." Only if the Debtor can meet his burden of proving either that he was not a responsible person or did not act willfully, can he escape liability on the merits.

The first issue is whether the Debtor was a responsible person. In the pertinent period of the duration of the 1984 tax year, the Debtor served as President of Sure Products. Nevertheless, it is well-established that "Corporate office does not, *per se*, impose the duty to collect, account for

and pay over the withheld taxes." *Monday v. United States*, 421 F.2d 1210, 1214 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970).

In the following cases, the taxpayer-officer was found to be a responsible person under § 6672: *Howard v. United States*, 711 F.2d 729, 734 (5th Cir.1983) (corporate officer was found to be responsible, although he did not have final authority to pay taxes, because he had effective authority to pay other corporate obligations, meaning he did issue small checks without the chief executive officer's approval on a number of occasions); *Monday, supra* (President of corporation was found to be a responsible person because he was a majority shareholder and controlled the corporation, his duties under the By–Laws included "general supervision" of the corporation, and he had signature authority and decided what creditors should be paid); *Garnett v. United States*, 385 F.Supp. 665 (E.D.Ky. 1974) (Vice–President/General Manager was responsible because he had exclusive authority over plant operations, rendered daily operational decisions, assumed complete responsibility of personnel decisions despite the fact that disbursements exceeding $5,000.00 required assent of the Board of Directors or Executive Committee and the requirement of two signatures for withdrawal from the corporation's general account); and *Datlof v. United States*, 252 F.Supp. 11, 32 (E.D.Pa.1966), *Aff'd*, 370 F.2d 655 (3d Cir.1966), *cert. denied*, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 1624 (1967) (President/Treasurer was found to be a responsible person because of his position under the corporation's By–Laws, check-signing authority, signature authority on federal, state, and city tax returns, role in hiring and firing employees, ability to obtain loans, and his control over the Corporation's financial affairs).

By way of contrast, the taxpayer-officer was found not to be a responsible person in the following cases: *Slodov v. United States*, 436 U.S. 238, 246–59, 98 S.Ct. 1778, 1784–91, 56 L.Ed.2d 251 (1978) (although duties to collect, account for, and pay over taxes should be read in the disjunctive, the owner of a corporation is not responsible

for taxes due prior to his purchase of business); *Godfrey v. United States,* 748 F.2d 1568, 1575–76 (Fed.Cir.1984) (Chairman of Board who took the lead in attempting to avoid the corporation's insolvency by negotiation of loans and arrangement of sale of assets was not responsible because he had no role in the day-to-day management of the firm); *McCullough v. United States,* 462 F.2d 588 (5th Cir.1972) (although the taxpayer was the President of a corporation, his father had sole and dominating control); *Merrill v. United States,* 642 F.Supp. 1163, 1166–7 (W.D.N.C.1986) (stockholder/officer of corporation was found not a responsible person because he only had limited check-signing authority and signed his name to one year's tax return only for the sake of convenience); *Moats v. United States,* 564 F.Supp. 1330) (W.D.Mo.1983) (Vice President and Treasurer of parent corporation who had check-signing authority with subsidiary was found not to be a responsible person as to the subsidiary because he was told to stay out of the affairs of subsidiary and as a result infrequently visited it); and *Rubin v. United States,* 380 F.Supp. 1176 (W.D.Pa. 1974), *aff'd,* 515 F.2d 507 (3d Cir.1975) (Chairman of the Board of a professional basketball team was found not to be a responsible person until he assumed the day-to-day operations of the franchise).

Several of the cases have set forth a list of factors which courts should consider in determining whether a certain individual should in fact be determined to be a responsible person. Thus, in *In re Clate,* 69 B.R. 506, 509 (Bankr.W.D.Pa.1987), Judge Markovitz recently articulated the relevant factors as including the following:

1. the individual's status as an officer, director and/or stockholder of the corporation, and his attendant duties;
2. the individual's ability to sign corporate checks;
3. the individual's ability to sign corporate tax returns;
4. the individual's ability to hire and fire employees;
5. the individual's control over the corporation's financial affairs; and
6. the individual's possession of an entrepreneurial stake in the corporation.

Similar lists have been submitted by other courts. *See, e.g., Thibodeau v. United States,* 828 F.2d 1499, 1503–04 (11th Cir. 1987); *Silberberg v. United States,* 524 F.Supp. 744, 747 (E.D.N.Y.1981); *Braden v. United States,* 318 F.Supp. 1189, 1194 (S.D.Ohio 1970); *Datlof, supra,* 252 F.Supp. at 32–33; and *In re Thompson,* 37 B.R. 211, 216 (Bankr.M.D.Fla.1983).

Making reference to the factors enumerated in *Clate,* we observe that the Debtor was the highest ranking official of Sure Products in control of its day-to-day operations. He and persons subordinate to him had the sole check-signing authority. He signed the corporation's tax returns. He had the power to hire and fire employees. He had direct supervisory control over Ms. Marrozza, the bookkeeper, and hence over the financial affairs of Sure Products. It was also established that he had loaned $10,000.00 of his personal funds to the business, giving him an entrepreneurial stake in the corporation.

Therefore, while the mere fact that the Debtor was President of Sure Products is not decisive in determining whether or not he was a responsible person, it is highly persuasive in making this inquiry to observe that he performed, on a day-to-day basis, all of the supervisory duties normally within the scope of the duties of a corporate president. Thus, unlike the taxpayers in *Godfrey, Moats,* and *Rubin,* he was actively involved in the corporation's activities on a day-to-day basis. Unlike the taxpayer in *Merrill,* his responsibilities were not severely limited. And, unlike the taxpayer in *McCullough,* his presence as President of the corporation was not that of a mere figurehead.

The Debtor, apparently recognizing the force of these cases, attempts to argue that, although the Debtor functioned as President of Sure Products, he was in fact "basically a puppet who, in order to maintain his job, had to listen to the dictates of Sherwood Industries, Sidney Sussman, and Charles Henderson, among others."

[Debtor's] Memorandum of Law, at 2. The *Howard* case, *supra*, is cited as the principal authority against finding the Debtor to be a responsible persons.

The *Howard* case is analogous to this case, in that the taxpayer there claimed, like the Debtor here, that his nonpayment of taxes was done at the express direction of a party having authority over him. However, the *Howard* court soundly rejected the argument that the taxpayer's subjection to authority rendered him not a responsible person in the following passage, 711 F.2d at 734–35:

> The fact that Jennings [the taxpayer's supervisor] might well have fired Howard had he disobeyed Jennings' instructions and paid the taxes does not make Howard any less responsible for their payment. *See Brown [v. United States,]*, 464 F.2d [590,] 591 n. 1 [ (5th Cir.1972) ] ("responsible person" need not have final word on payment of bills and taxes). Howard had the status, duty and authority to pay the taxes owed, and would only have lost that authority after he had paid them. Authority to pay in this context means *effective power* to pay. That Howard had this authority is demonstrated by the fact that he did issue small checks without Jennings' approval on a number of occasions. *Commonwealth National Bank [of Dallas v. United States,]*, 665 F.2d [743,] 752 [ (5th Cir.1982) ]. Had Jennings fired Howard for paying the taxes, Howard would at least have fulfilled his legal obligations. Faced with the possibility of leaving the frying pan with only minor burns, Howard chose instead to stay on in the vain hope of avoiding the fire. While we appreciate the difficulty of his position, we cannot condone his abdication of the responsibility imposed upon him by law. *See Moore [v. United States,]* 465 F.2d [514,] 517 [ (5th Cir.1972), *cert. denied*, 409 U.S. 1108 [93 S.Ct. 907, 34 L.Ed.2d 688] (1973) ] (corporate officers who merely followed their superior's instructions in issuing checks to creditors were nevertheless "responsible persons").

*Accord, Freeman v. United States*, 603 F.Supp. 272, 275 (D.Ariz.1985) (court rejects argument that a corporate officer lacks authority to pay taxes and is not a responsible person under § 6672 because a superior officer ordered the withheld funds to be paid to other creditors); and *Fontenot v. United States*, 547 F.Supp. 496, 501–03 (M.D.La.1982) (court holds that officer with authority to decide to pay withheld taxes is a responsible person despite his contention that he was a mere figurehead).

■ We ascertain from the foregoing authorities that the determinative factor in establishing whether a party is responsible for liability under § 6672 is the taxpayer's status as a legitimate officer having control over the financial operations of a corporation which fails to pay withheld taxes. There is no question that, as a functioning President of Sure Products, the Debtor was indeed legitimately in control of Sure Products' financial affairs. In all corporations which are not owned and managed by the same individual, any individuals employed could probably argue that their authority is limited to some extent by directives from other individuals. However, when an individual's status reaches a certain height, he will not be permitted to pass the buck to other individuals for purposes of liability under § 6672. As in *Howard*, we believe that the Debtor's position, both nominally and functionally, attained such a height that he cannot avoid responsibility under § 6672. The Debtor's defense that he was not responsible because he was a mere "puppet" of Sherwood Industries and/or Messrs. Sussman or Henderson is therefore unavailing.

■ The second issue, whether the Debtor acted "willfully," is even less problematical than the issue of whether he is a "responsible person." "[W]illfulness under § 6672 requires only that the failure to pay result from a voluntary, conscious and intentional payment to others before the government." *Wall v. United States*, 592 F.2d 154, 163 (3d Cir.1979). *Accord, e.g., Clate, supra*, 69 B.R. at 509; and *In re Flemister*, 48 B.R. 427, 430 (Bankr.N.D.Ga. 1984). A contention that the taxpayer does not even know that withholding taxes are due or unpaid is not a successful defense if

the taxpayer is in a position to know and find out these facts. *See Wright v. United States,* 809 F.2d 425, 427 (7th Cir.1987); *Goebert v. United States,* 412 F.Supp. 356, 361 (E.D.Pa.1976); and *Datlof, supra,* 252 F.Supp. at 32. The argument that economic factors left the taxpayer no choice but to refrain from remitting withholding taxes to the government has been soundly rejected. *Emshwiller v. United States,* 565 F.2d 1042, 1045 (8th Cir.1977).

The Debtor here admitted that he knew that corporate funds were being used to pay creditors other than the IRS. Thus, his actions were, beyond a doubt, voluntary, conscious, and intentional. His counter-arguments on this point appear to be the following: (1) He thought that the matter would be resolved later; and (2) His actions were done solely at the command of, particularly, Mr. Henderson, and hence were done according to Mr. Henderson's will, not his.

The *Wright, Goebert,* and *Datlof* cases answer the first argument. Being in a position to know that withholding taxes were not promptly paid when due, the Debtor was in a position to know that a strong likelihood existed that they would never be paid.

The *Howard* case again answers the second argument. In the passage pertinent to this issue, the court states as follows, at 711 F.2d 735–36:

> Howard nonetheless argues that in order to be willful, his failure to pay the taxes had to be voluntary. Since he was only following his superior's orders, he contends that his omission was involuntary, i.e. that he was not personally at fault for the failure to pay. In *Slodov v. United States,* 436 U.S. 238, 93 S.Ct. 1778, 36 L.Ed.2d 251 (1978), the Supreme Court stated that "[t]he fact that [section 6672] imposes a 'penalty' and is violated only by a 'willful failure' is in itself strong evidence that it was not intended to impose liability without personal fault." *Id.* 98 S.Ct. at 1788. However, as we have already noted in our analysis of Howard's status as a "responsible person," Howard had a choice. He could

have paid the taxes, accepted the consequences, and thus avoided the penalty. Neither his discomfort over not paying the taxes, nor his desire to see them paid, makes his failure to pay any the less willful. In the context of 6672(a), "willful" means voluntary, conscious, or intentional, as opposed to accidental. *Garsky v. United States,* 600 F.2d 86, 91 (7th Cir.1979). An action or omission need not be motivated by bad intent to be willful. *Feist v. United States,* 607 F.2d 954, 961 & n. 8 (Ct.Cl.1979); *Mazo [v. United States],* 591 F.2d [1151] at 1154, [(5th Cir.), *cert. denied,* 444 U.S. 842 [100 S.Ct. 82, 62 L.Ed.2d 54 (1979)]. *Sorensen v. United States,* 521 F.2d 325, 328 & N. 3 (9th Cir.1975). A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness. *Feist,* 607 F.2d at 961; *Mazo,* 591 F.2d at 1157; *Brown v. United States,* 591 F.2d 1136, 1140 (5th Cir.1979); *Sorensen,* 521 F.2d at 328; *Brown [v. United States],* 464 F.2d [590] at 591 [(5th Cir.1972)]; *Monday,* 421 F.2d at 1215.

We should add that our findings that the Debtor is a "responsible person" and acted "willfully" assume, *arguendo,* that his testimony that he was a mere puppet of Sherwood Industries and/or Messrs. Henderson and Sussman is credible. However, despite lack of direct rebuttal to this testimony, we are doubtful of its credibility. Ms. Marrozza testified that, while Mr. Henderson played a key role in administering Sure Products prior to 1984, he was "not around any more" during the year of 1984 when the Debtor served as President. She verified the Debtor's complete control over her and all other operations and employees of Sure Products during the pertinent period. It was apparent to us that, relative to not only the testimony of Ms. Marrozza, but also his own prior testimony at a deposition in connection with this litigation, the Debtor attempted to minimize his authority vis-a-vis that of Mr. Henderson at the trial. In sum, we believe that the Debtor did in fact exercise the ordinary powers of a corporate

president, subject to the normal oversight of parties having an ownership interest in the corporation. Under these circumstances, the Debtor cannot evade liability for the unpaid withholding taxes of Sure Products in 1984.

We therefore conclude that the Debtor is not entitled to prevail on the underlying merits of his objection to IRS's claim, as most recently amended to confine same to a $26,262.87 priority claim against the Husband–Debtor for calendar year 1984 only.

The Debtors' only remaining prospects for salvaging a confirmable Chapter 13 Plan would appear to be as follows:

1. Successfully defending the motion to extend the bar date under B.Rules 3003(c)(3) and 9006(b)(2) which we shall direct the IRS to file. This would require successfully opposing the IRS's probable contention that "excusable neglect" justified its late filing and/or arguing that the apparent holding of *Harbor Tank* that the entry of a confirmation order is immaterial is not applicable here.

2. Amending the Plan to attempt to pay the IRS outside of the Plan. *See In re Waldman,* 81 B.R. 313, 314 (Bankr.E.D.Pa. 1987); and *In re Evans,* 66 B.R. 506, 509–11 (Bankr.E.D.Pa.1986); *aff'd,* 77 B.R. 457 (E.D.Pa.1987). However, we note that, unless the IRS agrees to this treatment, its priority claims cannot be so dealt with in this manner. *See* 11 U.S.C. § 1322(a)(2); and *Evans, supra,* 66 B.R. at 510–11.

3. Amending the Plan to pay the entire allowed priority claim of the IRS in the Plan. This alternative appears to be beyond the Debtors' financial capabilities.

Thus, none of these alternatives may be feasible. Having had eighteen (18) scheduled confirmation hearings in the past, we are reluctant to schedule more if our Confirmation Order of January 7, 1988, must in fact be vacated. We are therefore entering an Order which will allow us to monitor this matter on a short leash, and will direct its dismissal if our previous Confirmation Order is vacated and a feasible Plan cannot be formulated in a fairly brief period of time. *Cf. In re Smith,* 77 B.R. 496, 501–03 (Bankr.E.D.Pa.1987) (delay in administration of a bankruptcy case cannot be tolerated).

## ORDER

AND NOW, this 8th day of August, 1988, after a trial of June 15, 1988, and consideration of Briefs of the parties subsequent to an Order of February 12, 1988, of the United States District Court, reversing our Orders of October 8, 1987, and November 9, 1987, and remanding this matter to us for consideration of the merits of the Debtor's Objection to certain Proofs of Claim filed by the United States Internal Revenue Service (hereinafter referred to as "the IRS"), it is ORDERED AND DECREED as follows:

1. The IRS is accorded an opportunity to file and serve a Motion to extend the time for filing Proofs of Claim and to set aside our Confirmation Order of January 7, 1988, on or before August 23, 1988.

2. The Debtor shall file any Answer to any such Motion on or before September 2, 1988.

3. A hearing on any such Motion is scheduled on

THURSDAY, SEPTEMBER 8, 1988, at 10:00 A.M. in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

4. If our Confirmation Order of January 7, 1988, is set aside, the Debtors shall be accorded until September 30, 1988, to file an Amended Chapter 13 Plan and serve same upon counsel for the IRS and the Standing Chapter 13 Trustee. The Debtors shall consider their prospects for presenting such an Amended Plan immediately, on the assumption that the IRS will successfully assert its right to file a late proof of claim and set aside our Confirmation Order of January 7, 1988.

5. A hearing to consider confirmation of any Amended Plan filed by the Debtors, any Objections thereto, and to consider whether to dismiss this case if no Confirmable Plan is presented shall be scheduled on

THURSDAY, OCTOBER 20, 1988, at 10:00 A.M. in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

6. In light of the long pendency of this matter, it is not anticipated that any further continuances of any of the dates set forth herein will be entertained.